ELISHA DOUGLAS *vs.* JOHN STETSON.

Suffolk.    March 20, 1893. — June 26, 1893.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Reissue of Mortgage Note — Redelivery of Mortgage of Personal Property — Agreement as to Revival of Powers in Mortgage — Wrongful Sale.*

A reissue to the mortgagee by the mortgagor of the old note, which had been paid, for a new loan, accompanied by a redelivery of the mortgage with the agreement that all the rights, privileges, and powers contained in the mortgage deed should be revived for the purpose of securing the mortgagee for the loan thus made to the mortgagor, does not vest the title to the goods in the mortgagee, it not being claimed that there ever was any delivery of them to the mortgagee, or that he acquired any right to or authority over them except by this transaction, and it appearing also that the original mortgage departed widely from the transaction.

TORT for conversion. Trial in the Superior Court, before *Sherman*, J., who reported the case for the determination of this court, in substance as follows.

On March 8, 1889, the plaintiff borrowed of the defendant the sum of one hundred and sixty dollars, and as security therefor mortgaged to the defendant the personal property claimed in this action, by mortgage and note of that date, both of which were made and executed by the plaintiff and his wife, the provision of the mortgage being that the sum borrowed should be paid within three months from date, and that upon its payment the note should be void. On January 8, 1890, the plaintiff paid the note in full, with interest, and the agent for the defendant testified that at the time of payment the plaintiff said to the defendant's agent, "I do not know how long before I shall need this money again," and that the defendant's agent said in reply, "Keep your papers and you can re-borrow what you desire at any time." This statement was denied by the plaintiff. There was no discharge of the mortgage by the defendant, except such as might operate by the payment of the loan, and the mortgage and note were returned to the plaintiff, who retained them in his possession until March 12, 1890, when he applied to the defendant for another loan, and the defendant at his request went to the dwelling-place of the plaintiff, and, after viewing the property named in the mortgage, loaned the plaintiff the sum of one hundred and twenty-five dollars. No new papers were drawn, but the plaintiff returned to the defendant the old mortgage and note, and there was evidence tending to show that both the plaintiff and the defendant understood and agreed that all the rights, privileges, and powers contained in the mortgage should be revived for the purpose of securing the defendant for the loan then made.

The plaintiff continued to pay interest on the second loan, the amount paid by him being according to the rate named in the original note, until January, 1891, when he neglected to make any further payment.

On March 26, 1891, the plaintiff having neglected to pay interest as aforesaid, and the principal having been demanded by the defendant of the plaintiff, who neglected to pay the same, the property was taken by the defendant's agents, against

the plaintiff's objection, and sold at public auction, according to the terms of the mortgage, for the purpose of satisfying the defendant's loan.   There was evidence tending to show the value of the property.

The judge submitted two questions to the jury : "1. Was there an agreement on March 12, 1890, between the parties, at the time of the delivery of the note and mortgage by the plaintiff to the defendant, that the mortgage should be taken and held as security for the sum of one hundred and twenty-five dollars ?   2. What was the value of the property taken by the defendant ? "

The judge instructed the jury that if their answer to the first question should be " Yes," they should find their verdict for the defendant; otherwise, for the plaintiff.

The jury answered " Yes " to the first question, and to the second, that the value of the property was two hundred fifty-nine $\frac{82}{100}$ dollars; and rendered a verdict for the defendant.

If the instructions were correct, judgment was to be entered on the verdict; otherwise, the verdict was to be set aside and judgment entered for the plaintiff for the sum of two hundred fifty-nine $\frac{82}{100}$ dollars, with interest from the date of the writ.

The case was submitted on briefs to all the judges.

*C. E. Washburn*, for the plaintiff.

*R. R. Gilman & W. H. Mitchell*, for the defendant.

MORTON, J.   By the mortgage of March 8, 1889, the defendant acquired a defeasible title to the goods, subject to be defeated and revested in the mortgagors upon performance of the conditions of the mortgage.   *Landon* v. *Emmons*, 97 Mass. 37.   *Weeks* v. *Baker*, 152 Mass. 20, and cases cited.   The payment by the mortgagors, without anything more, of the sum secured by the mortgage, operated of itself to discharge the mortgage; and the mortgagors were thereupon in possession of the goods as of their former title.   *Parks* v. *Hall*, 2 Pick. 206, 210, 211.   *Claflin* v. *Godfrey*, 21 Pick. 1.   *Merrill* v. *Chase*, 3 Allen, 339.   *Joslyn* v. *Wyman*, 5 Allen, 62.   *Franklin Bank* v. *Pratt*, 31 Maine, 501.   *Mead* v. *York*, 2 Seld. 449, 451.   The defendant relies upon a reissue to him by the plaintiff of the note for a new loan, accompanied by a redelivery of the mortgage with the agreement that all the rights, privileges, and powers

contained in the mortgage deed should be revived for the purpose
of securing him for the loan thus made to the plaintiff. The
question is whether this transaction vested the title to the goods
in the defendant, it not being claimed that there ever was any
delivery of them to him, or that he acquired any right to or
authority over them except by this transaction. We do not
think it did. The reissue of the note for a valuable consider-
ation certainly did not convey to the defendant a title, defeasible
or otherwise, to the goods. *Merrill* v. *Chase*, 3 Allen, 339. Did
the redelivery of the mortgage deed, under the circumstances, and
with the agreement set forth? It is said in Rolle's Abr. Faits,
(N) 3, p. 26, that "if a man seal and deliver a deed and then the
seal is torn off from such deed, if he seals and delivers it again,
though the same writing remains, that is still a good deed";
and again, in Com. Dig. Faits, (B) 5, that, "if a deed be can-
celled, and afterwards executed and delivered *de novo*, it shall
be good." It is evident that the authors were speaking of the
delivery of a deed as originally drawn for the purpose of carrying
out the agreement as originally made. This is not such a case.
It is an attempt to attach a new debt arising out of a new
transaction to a mortgage which has been paid and is no longer
a subsisting security, but which it is claimed the parties have
revived by agreeing that it should be security for a new debt.
*Merrill* v. *Chase*, and *Joslyn* v. *Wyman*, *ubi supra*. The pur-
pose of a written mortgage is to state in all essential particulars
the contract between the parties to it. We think the original
mortgage departs too widely from the transaction in which it was
sought afterwards to use it to be made available as security for
the loan then made. The parties are not the same. The origi-
nal mortgage was made and executed by the plaintiff and his
wife. The covenants contained in it were their covenants. The
note secured by it was their note. The conditions related to the
amount then borrowed, which was different from that borrowed by
the plaintiff afterwards, and provided that the sum then borrowed
should be paid within three months from the date of the mort-
gage, and that upon its payment the note signed by the plaintiff
and his wife should be void. In order that the original mortgage
deed should correspond with the transaction in which the de-
fendant now seeks to avail himself of it as security, it would be

necessary to rewrite it in many essential particulars. We must take the instrument as it is, and we do not think the defendant can avail himself of it as security for the debt to which he seeks to apply it. *Joslyn* v. *Wyman, Merrill* v. *Chase,* and *Mead* v. *York, ubi supra.*

The defendant has proceeded on the footing of a mortgagee, and by virtue of the right and power supposed to be vested in him as mortgagee. The instrument being inoperative as a mortgage, the sale, which was against the plaintiff's objection and without his consent, was wrongful. The case might stand differently if the plaintiff were seeking the aid of the court as a court of equity to compel the defendant to cancel and discharge or redeliver the mortgage. *Upton* v. *National Bank of South Reading,* 120 Mass. 153. *Joslyn* v. *Wyman,* 5 Allen, 62. This, however, is an action at law. A majority of the court are of opinion that the entries should be, verdict set aside, judgment for the plaintiff for $259.82, and interest from date of writ, and it is                    *So ordered.*