MARIETTA P. BROOKS & another *vs.* EUGENE D. BROOKS.
EUGENE D. BROOKS *vs.* MARIETTA P. BROOKS & another.

Middlesex.    December 1, 1896. — June 16, 1897.

Present: FIELD, C. J., KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Bill to Redeem — Security of Mortgage for Subsequent Advances.*

A mortgage of real estate given to secure the payment of a definite sum of money cannot be held by the assignee thereof as security for other money subsequently advanced by him to the mortgagor, in the absence of an agreement to that effect; and an indefinite understanding that the mortgagor would repay such advances from the proceeds of a sale of a portion of the land subject to the mortgage is not equivalent to such an agreement.

FIELD, C. J.    This is a bill to redeem certain land from a mortgage.    The answer sets up that, in addition to the amount due on the note secured by the mortgage, other sums of money have been advanced by the defendant, the assignee of the mortgage, for which it was agreed that the mortgage should be held as security.    The contention is that the plaintiffs should be required to pay these sums, as well as the amount due on the mortgage note, in order to redeem, or that the bill should be dismissed.    There is a cross-bill, in which the same claims are made as are set up by the defendant in his answer.    The case was sent to a special master " to hear the parties, with their witnesses, in the above entitled matters, find the facts, and make a report " to the court.

The master has made an elaborate report, finding the facts, and stating the amounts which the plaintiffs should pay in order to redeem, according to several different views of the law.

The defendant filed exceptions to this report. These exceptions were all overruled except the sixth, which was sustained, and the master's report was confirmed except as to the matters covered by the sixth exception. The sixth exception is as follows: " That the advances and payments made by said Eugene [the defendant] for taxes on said real estate, subsequent to the purchase by him of the mortgage and note, having been made by him to preserve his security under the said mortgage, and upon the request of the said parties, and for their benefit, ought to be considered as a part of the mortgage debt, and the master should have so found and certified, with a statement of the amount on the same, with the interest accrued thereon." The master in his report found the amounts advanced and paid by the defendant for taxes on the real estate, with the dates of the advances and payments, and this enabled the justice of the Superior Court to compute the total amount due for such advances and payments, with interest, so far as they were made subsequently to the purchase of the mortgage and mortgage note by the defendant.

The court entered a final decree as follows:

" This case came on to be heard upon the bill and cross-bill, and answers thereto, the report of the master, and exceptions to the same, and was argued by counsel; and thereupon, and in consideration thereof, it is hereby ordered, adjudged, and decreed that the plaintiffs are the owners of the real estate, and the defendant the owner and holder of the mortgage described in the bill and cross-bill; that the plaintiffs are entitled to redeem the premises from said mortgage upon payment of the balance due on the mortgage note, and interest according to the terms of said note, and of the amount paid as taxes by the defendant since he became the owner and holder of said mortgage, with interest upon the same.

" That the balance due upon the note, with interest to January 1, 1896, is $1,709.04; that the amount paid as taxes by the defendant, and interest thereon to January 1, 1896, is $2,085.40; and that the plaintiffs may redeem the premises from said mortgage by the payment of both said sums, namely, $3,794.44, within sixty days from the date of this decree; and if said sum shall not be paid on or before the first day of January, 1896,

then the plaintiffs, to be entitled .to redeem, shall pay interest upon said sum of $3,794.44 from said date to the time of payment.

" That, upon said payment, the defendant is hereby ordered to discharge and cancel said mortgage by a proper instrument of discharge, and that thereafter the plaintiffs may hold said premises fully discharged of said mortgage.

" And that the defendant in the original bill recover his costs to be taxed by the court; and that the cross-bill be dismissed without costs."

The defendant appealed from the order overruling his exceptions to the master's report, and from the final decree. The exceptions which were overruled relate principally to the findings of fact by the master; and the contention is that the master should have found differently. But the evidence before the master is not reported. The order of reference did not require him to report the evidence, and he has never been ordered by the court to do so, and the case was finally heard upon the report of the master. We must take the facts, therefore, as found by the master.

The mortgage was given on May 11, 1875, by Jonathan Brooks to Aaron D. Williams, to secure the payment of a note for $3,200, payable in five years from date, with interest at seven per cent. Jonathan Brooks died testate, on July 23, 1876, devising said estate to Nancy Brooks, his widow, and to Malinda Brooks and Marietta Pierce Brooks, his daughters. On July 9, 1891, Nancy Brooks died intestate, and the administrator of her estate, by license of the Probate Court, sold and conveyed her interest in the real estate to Malinda Brooks. Malinda Brooks and Marietta Pierce Brooks are therefore the owners of the equity of redemption, subject to the mortgage, Marietta owning one third and Malinda two thirds.

On July 5, 1878, Aaron D. Williams assigned the mortgage and note to Bertha F. Field, and on June 8, 1880, Bertha F. Field assigned the same to Eugene D. Brooks, the defendant. The bill was filed on August 23, 1892.

In regard to the advances and payments made by the defendant, the master finds as follows:

" In regard to said advances and payments, not by the terms

of the mortgage secured thereby, I find the following facts. There was no written agreement, or any writing by letter or otherwise, showing that these payments made by Eugene were to be considered as secured by the mortgage. As to the payments made by Eugene prior to the purchase (June 14, 1880) by him of the mortgage, there was no agreement or understanding at the time of such payments respectively that they were to be secured by the mortgage. Before his purchase thereof it was not known, or apparently contemplated, that he would purchase the mortgage. It was claimed by Eugene at the hearing before me that it was understood between him on the one hand, and Nancy (the mother) and Malinda and Marietta (the daughters) on the other, and at the time when he took the assignment of the mortgage, that, if he would buy the mortgage, he should hold it as security for the amounts which he had advanced, or might thereafter advance, to them or either of them; but I do not find that there was any specific or definite agreement to that effect. He was a cousin to Marietta and Malinda. After their father's death, they and their mother were in want of money from time to time, to pay their expenses of living, and for the improvement of the real estate in question, and to pay the interest on the mortgage and taxes on the real estate, and for other purposes. He was in the habit of advancing them money from time to time, as stated in the account, and sometimes he gave it to one and sometimes to another, according to which of them applied for it. There was no reason for giving it to one more than another, except that he gave it to the one who came for it. Sometimes he gave money to Nancy directly, and at other times to one or the other of the daughters, taking from her or them at some times a receipt signed by. Nancy, and at other times a 'borrowed and received,' or promise to pay with interest, signed by her. Some of the payments he made to Malinda, and took her receipt or promise to pay, and some to Marietta, and took her receipt or promise to pay. I do not think it necessary to classify the payments made to each, because they all come in the same category; that is to say, the cirumstances are the same as to the payments made to each. If the payments to either of them are secured by the mortgage, then all the payments are secured; if the payments are not secured by the mort-

gage, then they are personal claims against all or some of the three women, as the case may be. There was no agreement as to any of the payments which would not apply to all; no payments were singled out as secured by the mortgage. If the payments were to be secured by the mortgage, it was by virtue of a general agreement that all the advances, past and future, were to be thus secured. There was no such specific agreement.

" While there was not what could be called an agreement definitely formulated to that effect, yet there was an understanding between the parties, as shown by their conversations, and in an indefinite way, that Eugene was to get his money when they should sell their land. The three women were desirous of laying out a street through the land, and of cutting up the land into house lots, and of realizing money from the sale thereof, which was done, and some of the house lots were sold before the death of said Nancy. No lots have been sold since her death. He, Eugene, paid taxes on the real estate and interest on the mortgage note before, and he paid taxes on the real estate after, he bought the mortgage and note, at the request of one or the other of the parties, and for their joint benefit. In brief, he advanced money from time to time to one or the other of the women, as the case might be, or for taxes or interest, or other purposes, and there was no specific agreement made as to when or how he was to be repaid. The interest, as shown by the schedules, on the advances I have calculated at six per cent, on the ground that an agreement simply that the advance should be secured by the mortgage, and there being no agreement as to the rate of interest thereon, cannot be construed as an agreement to pay more than the legal rate of interest on such advances, although a larger rate of interest is, by the terms of the mortgage, to be paid on the money originally secured thereby.

" The three women made sale of lot No. 29 for $4,000. They agreed with Eugene, in consideration of his releasing said lot from the lien of the mortgage, to pay him $2,000 of amount received by them on said sale. Eugene gave the release of the mortgage, but the three women never paid said $2,000 to him."

As the defendant has been allowed in account all the ad-

vances and payments of money for taxes made after he became the owner of the mortgage, his argument is now confined to the advances and payments of money for taxes made before his purchase of the mortgage, and to advances and payments of money made for other purposes, both before and after that purchase. The substance of the findings of the master is that, although there was no agreement that the advances and payments made by the defendant, whether made before or after his purchase of the mortgage, should be secured by the mortgage, yet there was an understanding in an indefinite way that the defendant should get his money when the plaintiffs should sell their land. Only one agreement is found, and that is the agreement of Nancy Brooks and the plaintiffs with the defendant that, if he would release lot No. 29 from the mortgage, they would pay him $2,000 of the $4,000 which they were to receive from a sale of the lot. He gave the release, they sold the lot and received $4,000, and never paid the defendant the $2,000 promised.

The defendant relies upon *Joslyn* v. *Wyman*, 5 Allen, 62; *Stone* v. *Lane*, 10 Allen, 74; *Upton* v. *National Bank of South Reading*, 120 Mass. 153; *Taft* v. *Stoddard*, 142 Mass. 545; *Douglas* v. *Stetson*, 159 Mass. 428; and other similar cases. But the difficulty is that there never was any agreement that the mortgage should be held by the defendant as security for the advances and payments, and an indefinite understanding that the plaintiffs would repay the payments and advances when they sold the land out of the money obtained from the sale is not enough. Such an understanding, if it means anything, means that the land must be sold either discharged of the mortgage or subject to the mortgage. If the mortgage is discharged, it no longer can be held as security; if the land is sold subject to the mortgage, the purchaser takes the land subject to the mortgage, according to its terms, and it cannot be held as security for other debts unless the purchaser assents. The agreement to pay $2,000 for the release of lot No. 29 from the mortgage out of the $4,000 to be received from the sale, is not equivalent to an agreement that the mortgage should stand as security for $2,000 in addition to the amount due on the mortgage note. If they had paid this $2,000, they could have appropriated it towards the payment of what was due on the mortgage

note. We have been shown no case where a mortgage given to secure the payment of a definite sum of money has been held to be security for a larger sum, on facts such as are found in the present case. The final decree of the Superior Court must be affirmed, the sixty days within which the plaintiffs may redeem to be reckoned from the day of the filing of the rescript of this court in the Superior Court, and interest on the sum to be paid to be reckoned up to the time of payment. *So ordered.*

*H. J. Wells*, for Eugene D. Brooks.

*S. H. Tyng*, for Marietta P. and Malinda Brooks.