| | |
|---|---|
| Bradford Campbell vs. Lederer Realty Corporation et al. | Eq.No.5480 |

· March 8, 1926

BAKER, J. This matter is now before the Court on an account ordered by a decree entered as of July 10, 1924, following · a decision handed down by the Supreme Court.

It seems neither necessary nor advisable at this time to rehearse in detail the travel of the litigation involving the parties now before the Court or to set out fully the facts in connection therewith.

In accordance with the provisions of the aforesaid decree the complainant filed his accout in this court, said account appearing as Bradford Campbell's Exhibits A and B. A considerable number of items presented therein are strenuously objected to by the respondent Elisha Campbell, and the question now presented for the determination of the Court is as to whether the account presented should be allowed, and, if not, in what manner it should be amended or changed.

In considering Bradford Campbell's Exhibit A, the respondent Elisha Campbell raises no question as to the amount of receipts from rents and interest stated thereon, viz.: $15,523.12;

nor does he contest the payments of the taxes, insurance, repairs, and the interest in connection therewith, amounting in all to $6,370.54, leaving remaining as the respondent Elisha Campbell's one-half interest in the net rents the sum of $4,576.29. He does however, object to items appearing on said Exhibit A purporting to represent payments from said rents to the said Elisha for his use and benefit, amounting in all to $7,810.90 and covering the period from January 1, 1918 to date.

The complainant contends that as he paid out these sums between the dates in question and after the assignment of March 29, 1911, he is in this proceeding equitably entitled to be credited with the sum representing these payments.

The respondent Elisha, on the other hand, claims that no such credit is covered by the provisions of the decree under which this accounting is being had, and, further, that as a matter of fact the question of these payments has been determined by the decision of the Supreme Court.

Campbell vs. Lederer Realty Corp. et al. 125 Atl. 222.

After giving the matter careful consideraion, it seems clear that the question as to any advances made by Bradford to Elisha, or, as is claimed, for his use and benefit prior to the date of the assignment, namely, March 29, 1911, was definitely decided in the case above referred to.

The Court says: "It appears plain to us that these payments when made were not intended by Bradford to create an obligation of repayment, but were gratuities made upon consideration of filial regard, particularly toward his mother."

The complainant argues that this portion of the opinion was not necessary for the determination of the actual question before the Court at that time. Whether this is so or not, the statement is so clear that it is

one which this Court should follow.

The testimony presented at this time does not show that the advances made to Elisha Campbell, or to his wife, or to others on his behalf, were in any way made from the rents of the Pine Street property, as the complainant now urges. Apparently after the assignment Bradford Campbell continued from time to time to make payments or advances to his parents, the larger part of them being made to his mother. There seems to be reason to doubt but that these advances after the assignment were made for the same reason and with the same object in view as the advances made prior to the date of the assignment. The weight of the evidence, in the judgment of the Court, would tend to show that these later advances were made by the complainant chiefly out of regard for his mother and with no expectation of repayment, and were, in fact, in the nature of gratuities. There is nothing in the case which would seem to show that these advances were made in consideration of the assignment which had been given by Elisha. The case of Brooks vs. Brooks, 169 Mass. 38, cited by the complainant, in the opinion of the Court does not support his position in this connection. Furthermore, the chief obstacle in allowing the complainant credit for these advances, in the opinion of the Court, is the form of the decree under which this account is being taken. The language of that decree provides, among other things, that Bradford Campbell may be credited, "and with all expenditures; *** made, paid or incurred by said Bradford Campbell for the protection, preservation and enforcement of the rights and interests assigned, transferred and conveyed under said assignment on March 29, 1911, and deed of November 1, 1917," and also "with one-half of all expenditures, *** made, paid or incurred by said Bradford

Campbell for the joint benefit of himself and Elisha J. Campbell in the settlement of the said James Campbell estate."

This Court feels that it is bound by the terms of the decree under which it is acting. The advances sought to be included in the account, in the judgment of the Court can not in any way whatsoever be construed as expenditures made, paid or incurred by said Bradford Campbell for the protection, preservation or enforcement of the rights and interests assigned and conveyed or for any expenditures for the joint benefit of himself and Elisha in the settlement of the James Campbell estate. It would seem that if the Court intended that Bradford Campbell should be given credit for advances made to Elisha Campbell, or to his wife, or to others for Elisha's benefit, a special provision would have been inserted in the decree to that effect.

After due consideration, therefore, the Court is of the opinion that the items appearing on Bradford Campbell's Exhibit A, amounting to $7,810.90, being listed as payments from rents, are not properly a part of said account and should be stricken therefrom and disallowed.

During the hearing Bradford Campbell presented an exhibit which was admitted de bene and marked Bradford Campbell's Exhibit F, which contained the same figures appearing on his exhibits A and B, but in addition thereto a credit, amounting with interest to approximately $9,000, purporting to cover payments or advances made to or for the use and benefit of Elisha from the date of the assignment, March 29, 1911, to December 31, 1917. Bradford also introduced as an exhibit certain checks which were admitted de bene and marked Bradford Campbell's Exhibit E. These checks had to do with the advances and payments mentioned above. In view of the position taken by the Court in regard to the propriety of including in the account now before the Court any of the so-called advances or payments made by Bradford since the date of the assignment, the Court finds that the two exhibits E and F, admitted de bene, are not material in this proceeding and they are therefore excluded.

In considering the portion of the account appearing on Bradford Campbell's Exhibit B, the respondent Elisha does not raise any question in connection with the amount of the Loan of March 29, 1911, or the interest thereon, or the Fitzgerald claim and the interest in connection therewith. Elisha, however, does dispute the right of Bradford to credit the amounts paid in 1917 and '18 for claims against the estate of James Campbell. The facts in regard to this matter would seem to show that this estate, against which Elisha had a large claim, had been in litigation for some years without much being accomplished, other creditors apparently disputing the claim which Elisha had filed against that estate. During this period the complainant Bradford had not become interested in any way in the estate or property involved. It would appear that the attorney representing Elisha in the early part of the year 1917 advised him, as a matter of policy, to purchase certain of the claims against the estate of James Campbell in order that that estate might be more easily closed. The respondent Elisha apparently interested his son Bradford, the complainant, in the matter with the result that in June of 1917 the complainant purchased what was known as the Lovegrove interest in both the estate and in the Pine street property. At this time Mrs. Lovegrove and Elisha Campbell were the only parties interested in the estate of James Campbell, each having an undivided half, because a short time prior thereto the brother, George

Campbell, had died unmarried and intestate. When Bradford obtained the Lovegrove conveyance and assignment, he became entitled to a one-half interest in the property on Pine street and in the estate of James Campbell. Thereafter he consulted frequently with the attorney representing Elisha and took an active interest in the estate and in adjusting the various matters in controversy. In the early part of 1918 he purchased a number of claims against the estate of James Campbell, said claims being for face value of about $8,000 and being bought by him for a figure in the neighborhood of $2500. These claims were bought by him in his own name.

The respondent Elisha now contends that these claims were purchased by Bradford entirely in his own interest and for the purpose of enforcing them against the estate in order to make money, at that time it appearing that possibly a substantial sum would be realized for the estate, and that, therefore, they should not be charged in this account against Elisha Campbell as being money expended for the preservation of the assigned interest.

Bradford Campbell, on the other hand, argues that he is entitled to charge these on his account to Elisha because he purchased them merely for the purpose of protecting Elisha's interest, which had previously been assigned to him.

After careful consideration the Court does not believe that either of these extreme positions is the correct one.

In the first place, in regard to the Lovegrove claim, the Court is of the opinion that this should not be charged in the account as a credit against Elisha's interest. The amount paid for the purchase of this claim against the estate from the evidence was apparently $238, which

amount should be deducted from the item of the account, and the interest thereon, $114.39, which should also be deducted from the interest figured in the account in connection with the money paid for these claims.

In the judgment of the court, Bradford purchased the Lovegrove interest in the estate and the property on Pine street for his own benefit. The interest in the estate and the interest in the property were both conveyed to him by one instrument. If one was purchased for the benefit of Elisha's interest in the estate, it is hard to see why the interest in the real estate was not purchasd for the same purpose.

The other claims would seem to the Court to have been purchased by Bradford with the two-fold object in view of protecting his own interest in the estate and increasing the value thereof as much as possible by purchasing the claims at a low figure, he having a one-half interest in the estate at that time, and also with the object of protecting Elisha's interest in the estate and claim against the estate, of which he was the assignee. The Court in Campbell vs. Lederer Realty Corp. supra, referring to Bradford after the purchase of these claims, says: "He frequently consulted with Mr. Brown, as counsel took part in conferences concerning the progress of the proceedings, and his acts became consistent with those of a man who had a real interest in the estate, and was taking some control in its settlement."

The Court believes that the only fair way of handling this matter in the account is to credit Bradford with one-half the amount of the money expended for the purchase of these claims, outside of the Lovegrove claim, and with one-half of the interest thereon, rather than with the whole amount expended as appears in the account. In the judgment of the Court, therefore, the account as filed

should be modified in this regard.

The next items on Bradford Campbell's Exhibit B which are disputed by Elisha are the items in regard to the attorney's fee. Elisha argues, first, that the bill of the attorney, as appears from Exhibit C, is unreasonable. Each side placed an attorney on the stand, one of whom testified that the charges on the bill were fair and reasonable considering the amount of work done, and the other attorney testifying that a fair charge under all the circumstances would be approximately $2000. The bills, namely, Bradford Campbell's Exhibits C and D are based largely on time expended. This, of course, should not be the only consideration in determining whether or not the amount charged is reasonable. The question presented is undoubtedly a difficult one. The question of the amount involved in the litigation and the results obtained are of course pertinent to the fee which an attorney should charge.

Gorman vs. Banigan, 22 R. I. 22.

It would appear from the testimony that a portion of the litigation involved was very successful; that is to say, it succeeded in recovering a considerable amount of rents in the Lederer litigation, whereas a considerable part of the litigation connected with the Campbell estate and other phases of the matter were rather unprofitable.

Taking the whole situation into consideration, however, and also realizing the difficulty involved in dealing with and handling the client in question, the Court has come to the conclusion that the amount charged by the attorney under all the circumstances of this litigation is reasonable.

That being so, the next question raised is as to whether any portion of the bills charged should be disallowed.

Elisha argues that no allowance should be made for services between January 6, 1917, and June 1, 1917, because it was not until June that the attorney came into contact with Bradford Campbell and that this account covers only expenditures made, paid or incurred by Bradford Campbell. The latter argues that by reason of the assignment in question Elisha was really in the nature of an undisclosed principal and that he should be charged for the services in question. It would seem to the Court that Elisha's argument in this respect is correct. It has been decided that Elisha Campbell was in the nature of a mortgagor and that the assignment and deed were merely for the purpose of security. It does not seem to the Court that he can be considered an undisclosed principal in this matter and that, therefore, for the services appearing on Bradford Campbell's Exhibit C prior to June 1917, the Court is of the opinion that they should not properly be charged on the account to the credit of Bradford against Elisha.

After considering the number of hours listed between the dates in question and considering the total amount of the bill and the nature of the work, the Court believes that if an allowance of $1500 is struck from the bill for work done between January and June 1917, the result will be fair to the parties.

Elisha also claims that after April 1923 his interests and the interests of Bradford clearly became adverse and that the attorney in question then no longer represented him but that he had other counsel, and that therefore, after April 1923 he should not be liable for any charges, such as appear on Bradford Campbell's Exhibit D. He also claims that this matter is not covered by the decree in question. Bradford contends that the work done after April 1923 accrued to the benefit of Elisha and

that he should be made to pay for half of it, he having charged it to the joint account.

In regard to this item, the Court finds that after April 1923 the attorney no longer represented Elisha. The latter had other attorneys who participated in the litigation. To a considerable extent from then on the interests of Bradford and Elisha were adverse and while it is true that possibly certain things done by the attorney then representing Bradford might have accrued to the benefit of Elisha, nevertheless it does not seem to the Court that Bradford can charge up these services against Elisha. The Court finds, therefore, that on Bradford Campbell's Exhibit .D he is not entitled to charge against Elisha for services since the latter part of April 1923, when Elisha tore up the release which was then under dispute and relations were definitely severed. An examination of the time spent on this work after April 1923 leads the Court to believe that if an allowance of $1000 is made for the purpose of this account, this will be fair and reasonable under all the circumstances.

The remaining question then in connection with the attorney's fees is how they should be charged. Bradford has charged a portion on the joint account and a portion against the assigned interest. Elisha claims that Bradford should pay for all these services which he has credited against the assigned interest, chiefly on the ground that the interests of Bradford and Elisha were then adverse. This does not seem to the Court quite fair or just. At this time both Bradford and Elisha had interests in the estate and the property on Pine street. Bradford assumed, perhaps, that by virtue of the assignment and the deed he had entire and absolute control of both the estate and the real estate, but, as a matter of fact, as it was after-

wards determined, he was merely holding the deed and assignment as security from Elisha. In the judgment of the Court both parties were benefiting equally by the legal work that was being done and it seems to the Court that the only proper way is to charge all the legal services, outside of the services early in 1917 and after April 1923, to the joint account of both parties. That being so, the Court finds that on account it will be proper for Bradford to charge one-half of the bill for attorney's fees, other than during the dates specifically excluded, to Elisha.

It appears that the attorney kept one general account and that credits to this account were made in small payments. It would seem, therefore, following the rule just made, that the payments made on account of legal services and the interest charges thereon should be charged to the joint account, one-half to Bradford and one-half to Elisha.

The chief question remaining relates to the disposition of the Tinkham and Walker mortgages, so called. It appears in evidence that these are now held by third persons, but they are not bona fide purchasers for value, and the mortgages are subject to Bradford's control. He claims that he purchased these mortgages entirely as an investment and for his own benefit and that he is entitled to hold them and enforce them for their face value against Elisha's interest in the Pine street property. Elisha, on the other hand, argues that these mortgages were purchased in order to protect his interest in the Pine street property and that they should be included in the account and charged against him, and that when he has paid the proper sums thereon, they should be discharged. Bradford argues that the matter of these mortgages is entirely outside of this account and that they are not covered by the decree

under which the accounting is being taken.

Testimony in regard to the Tinkham and Walker mortgages was admitted at the hearing de bene. After considering the matter, the Court has come to the conclusion that this testimony is proper to be considered at this hearing on this account and therefore overrules the objection and admits the evidence.

It would seem from the testimony that Elisha had considerable to do with the purchase of the Tinkham mortgage. While it would appear that Mr. Brown ultimately closed the deal with Mr. Churchill, nevertheless Mr. Farrell had considerable to do with the matter in the interest of Elisha. Moreover, at the time the Tinkham mortgage was bought, Elisha by equity proceedings had the foreclosure of that mortgage enjoined and it was necessary that the equity proceedings in this connection be disposed of before the Tinkham mortgage was purchased by Bradford. In regard to the Walker mortgage, it is clear that Mr. Brown handled this.

A consideration of the whole matter, therefore, leads the Court to believe that these mortgages were purchased by Bradford with the chief idea in mind of protecting Elisha's interest in the Pine street property. This is clearly true of the purchase of the Tinkham mortgage. When the Walker mortgage was purchased Bradford was also to a certain extent protecting his own interest in the Pine street property. The decree provides that Bradford be credited with all expenditures made, paid or incurred for the protection, preservation and enforcements of the rights and interests assigned, transferred and conveyed. It seems to the Court that this matter of these mortgages comes clearly within the provisions of the decree in question.

The Court finds, therefore, that they should be included in the account; that they should be charged to Elisha for whatever amounts were expended in purchasing them, together with interest thereon, and that then said mortgages should be discharged as far as Elisha's interest in said Pine street property is concerned.

In conclusion, therefore, the Court finds, as to Bradford Campbell's Exhibit A, that the sum of $7810.90, representing payments by Bradford, should be disallowed for the reasons above given.

In connection with Bradford Campbell's Exhibit B, the Court finds that the item of $2682.89, representing money paid for claims against the estate of James Campbell, should be reduced by the sum of $238 and that then one-half of said sum as reduced should be credited on the account, and that as to the interest, the sum of $1202.64 should be reduced by the sum of $114.39, and that one-half of said sum as reduced should be charged on said credit rather than the whole.

The Court further finds that in regard to attorney's fees, the sum of $3,135, being payments on account, as appears on said Exhibit B, and the sum of $1043.25, being the interest thereon, should be reduced one-half on said account.

The Court further finds that the balance due for services, appearing on Exhibit B as $4,483.46, should be reduced by the sum of $1500 for the reasons stated in this rescript and that one-half of said sum as reduced should be credited on the account rather than the whole.

The Court also finds that the sum appearing on said account as $2005.92, being one-half of the services appearing on Exhibit D, should be reduced by the sum of $500 for the reasons hereinbefore stated.

The Court also finds that in addition there should be added to the account and credited to Bradford Campbell the amount paid for the Tinkham mortgage, namely, $750, with interest thereon, and one-half the amount paid for the Walker mortgage, namely, $275, with interest thereon.

The account of Bradford Campbell as filed is disallowed for the reasons and in the particulars herein referred to. The parties may present a decree and an account in accordance with this rescript.

For Complainant: William J. Brown.

For Respondents: Philip S. Knauer and William W. Moss.