JOHN W. CORCORAN *vs.* WESLEY R. BATCHELDER.

SAME *vs.* SAME.

Worcester.    October 3, 1888. — October 22, 1888.

Present: MORTON, C. J., DEVENS, W. ALLEN, C. ALLEN, & KNOWLTON, JJ.

*Rule of Superior Court — Late Filing of Deposition — Exceptions — National Bank — Declarations of a Party as Evidence — Special Finding of Jury.*

A single justice of the Superior Court, who finds that the failure to file a deposition within the time limited by the forty-first Common Law Rule of that court was caused by accident, may, in his discretion, order it to be filed thereafter; and no exception lies to the exercise of such discretion.

A national bank which lends to one person a sum exceeding one tenth of its capital stock against the prohibition of the U. S. Rev. Sts. § 5200, may recover of the borrower the excess of the loan above that limit.

Declarations and statements made by a party to an action to a third person, which were sought to be put in evidence by the former but the nature of which did not appear, and a private letter from the same party to still another person descriptive of the conversation, were *held* to be properly excluded.

On the issue whether a defendant delivered collateral security to M. as president of the L. Bank, or for his private use, full instructions were given to the jury as to M.'s authority to receive it for the bank, after which the question was put to them, "Did the defendant deliver the security to the L. Bank?" no objection being made to its form, and the jury answered the question in the negative. *Held,* that the special finding of the jury rendered the instructions immaterial, and that they must have understood the finding to mean that the security was not delivered to M. for the bank.

TWO ACTIONS OF CONTRACT by the receiver of the Lancaster National Bank of Clinton, upon three promissory notes, amounting in all to six thousand dollars, payable to the order of the bank and made by the defendant, each note bearing this indorsement: "Secured by one hundred seventy-three (173) shares Erie Tel. & Tel. Company." The defendant filed in each case an answer containing a general denial, and a special denial of the genuineness of the signatures to the notes, and alleging that the defendant deposited with the bank as collateral security the shares of stock referred to in the indorsement, which were worth more than the amount of the notes, and that the bank had disposed of such shares for a sum sufficient to pay the notes and to leave a balance in its hands. The defendant also filed in each case a declaration in set-off for the proceeds of the shares, to

each of which the plaintiff filed an answer containing a general denial, and averring that such shares, if ever deposited with the bank, had been removed therefrom and disposed of for the defendant's benefit.

The cases were tried together in the Superior Court, before *Mason*, J., who, after a verdict for the plaintiff, allowed a bill of exceptions, which so far as material appear in the opinion.

*B. F. Butler & F. L. Washburn*, for the defendant.

*P. A. Collins & J. W. Corcoran*, for the plaintiff.

MORTON, C. J.   Many exceptions were taken at the trial which are waived by the defendant.   We shall consider only those which he now relies upon.

The actions are brought upon several promissory notes, amounting to six thousand dollars, given by the defendant to the Lancaster National Bank of Clinton, of which the plaintiff is the receiver.   The principal defence set up in the answers and in the declarations in set-off is that the defendant deposited with the bank, as collateral security for the notes, one hundred and seventy-three shares of the capital stock of the Erie Telegraph and Telephone Company, which were of great value, and which the bank had sold and appropriated to its own use.

1. It appeared that the capital of the bank was one hundred thousand dollars, and that at the time when it failed, and when the plaintiff was appointed receiver, the defendant, who was a director, owed the bank for borrowed money the sum of fifteen thousand two hundred dollars, including the notes in suit, and that the defendant had paid nine thousand two hundred dollars of this amount.   The defendant asked the court to rule, that, under the U. S. Rev. Sts., § 5200, "the defendant could not in any event be liable to said bank for more than the sum of ten thousand dollars at any one time, and that there never having been a greater liability than ten thousand dollars, which was ten per cent of the whole capital stock of the bank, the plaintiff could not recover more than eight hundred dollars and interest thereon on these suits, or either of them."   The court rightly refused this ruling, even if this defence is open to the defendant under the pleadings.   It has been held by the Supreme Court of the United States, that the prohibition in § 5200 of the Revised Statutes of the United States does not prevent a bank from

recovering of a person to whom it has lent a sum greater than ten per cent of its capital stock, the excess of the loan over the limit of ten per cent. That decision is binding upon us. *Gold-Mining Co.* v. *National Bank*, 96 U. S. 640.

2. The defendant objected to the depositions of McNeil, the president of the bank, which were offered in evidence, on the ground that they were not seasonably filed under the 41st Common Law Rule of the Superior Court. They were not filed within fourteen days of the time they were opened, as required by the first part of that rule; but the rule further provides, that, " if by accident or unforeseen cause the party shall be prevented from filing his deposition within fourteen days, the court may allow it to be filed afterwards on motion and sufficient cause shown." It appeared at the trial that the counsel for the plaintiff filed the depositions on the fifteenth day after they were opened, and that he supposed that it was within the fourteen days under the rule. It was competent for the presiding justice to find that the failure to file them within the rule was caused by accident, and he had the right to order them to be filed within his discretion, which we cannot revise.

3. It appeared that the defendant and one Hosmer, who was also a director of the bank, were authorized by the directors of the bank, before its failure, to go to Washington as a committee to consult with the Comptroller of the Currency in regard to the affairs of the bank, and that on his return the defendant, in the presence of the other directors, entered on each of the notes in suit a statement that it was " Secured by one hundred seventy-three (173) shares Erie Tel. & Tel. Company." In order to show that he did this in good faith, it was competent for him to show that it was done by the instruction and advice of the Comptroller. To this extent the court admitted the conversation between the committee and the Comptroller. The defendant contends that he had the right to put in all that was said and done between the committee and the Comptroller, and the defendant was asked as a witness, in substance, what was said about collateral security, and about the condition of some of the notes of the bank secured by collateral, including his own. The court excluded the question. It was not competent for the defendant to put in his own declarations in his own favor. The exceptions do not

show that anything else was excluded by the ruling. They do not show what the declarations or statements sought to be put in were, and therefore fail to show that any testimony which was relevant or material was excluded.

4. The private letter written by the defendant to Paige, another director, describing in brief the interview of the committee with the Comptroller, was properly excluded, under the rule that a party cannot put in his own acts and declarations in the country in support of his case.

5. The judge instructed the jury, upon the question of the authority of the president to receive collateral security for the bank, in substance, that if they were satisfied that McNeil was duly authorized to receive such security for the bank, and that the defendant delivered it to him as to the bank, the defendant had established a delivery to the bank. These instructions seem to be substantially correct, but we need not consider them in detail, as the special finding of the jury has rendered them immaterial. The question put to the jury by the presiding judge was, " Did the defendant deliver one hundred and seventy-three shares of the Erie Telegraph and Telephone Company stock to the Lancaster National Bank of Clinton ?" which the jury answered in the negative. The main issue of fact in the case was, whether the defendant delivered the stock to McNeil as president of the bank and for the bank, or to McNeil for his personal use and convenience in furtherance of private speculations in which he, the defendant, and others were embarked. Under the instructions given them, it is entirely clear that the jury understood the finding to mean that the stock was not delivered to McNeil for the bank. The defendant now contends that the question was misleading, as it led the jury " to suppose that the stock must have been placed within the walls of the bank." He made no objection at the time, and it is too late now to object to the form of the question. But no one can read the bill of exceptions without being convinced that it is impossible that intelligent men could be misled in the manner suggested by the defendant. It is clear that the jury understood the question, and answered it intelligently.

*Exceptions overruled.*