JAMES A. HUTCHINSON *v.* THOMAS G. PLANT.

Essex. March 18, 1914. — May 25, 1914.

Present: RUGG, C. J., HAMMOND, LORING, SHELDON, & CROSBY, JJ.

*Agency,* Commission. *Contract,* Performance and breach. *Practice, Civil,* Statements of counsel, Conduct of trial. *Evidence,* Competency, Admissions and confessions, Production of papers.

In an action to recover a commission for having procured an agreement of two persons to pay the defendant $1,500,000 for a half interest in his shoe machinery business and to provide him with at least $1,000,000 of working capital for carrying on that business, if it appears that by reason of the services of the plaintiff the two persons in question at an interview with the defendant agreed to the terms of the agreement as set forth in a memorandum drawn by the plaintiff and approved by the defendant, but that, after the conclusion of that agreement, the defendant made new requirements to which the two persons contracting with him would not accede, and that the agreement which had been reached was abandoned and the whole matter dropped, the plaintiff is entitled to go to the jury on counts for a *quantum meruit* and on an account annexed.

Where at the trial of a civil case the plaintiff's counsel in his opening statement to the jury refers to an alleged admission made by the defendant, and, this statement being wholly unsupported by any evidence, the judge instructs the jury that it is to be disregarded, the defendant is not entitled as a matter of right to introduce evidence to contradict the counsel's unsupported statement, and the presiding judge in his discretion properly may refuse to permit him to do so.

At the trial of an action of contract the defendant was called as a witness by the plaintiff and the plaintiff's counsel asked the defendant whether he had dictated to any one a statement of what took place at a certain interview, and the defendant answered that he had so dictated to his attorney. The plaintiff's counsel then, appearing to read from a paper a statement purporting to be what was said by the defendant at the interview in question, asked the defendant whether he made that statement. The defendant answered, "Something on that order. I will not say you have not quoted it accurately. I will not say that I did not make that statement in exactly the words you have read." The evidence was competent and material and was not objected to. Neither the defendant nor his counsel then asked to see the paper. Afterwards, the defendant's counsel, before calling the defendant as a witness in his own behalf, asked for the paper, and the plaintiff's counsel refused to produce it. The presiding judge refused to order the production of the paper and excluded evidence offered by the defendant regarding the paper and its contents. *Held,* that the evidence put in by the plaintiff was not secondary evidence of the contents of the paper but primary evidence of an oral admission of the defendant, and that the defendant, even if he had had the right to see the paper from which the plaintiff's counsel was reading before he could be required to answer questions that really or apparently were asked about its contents, had waived such right by answering without objection, and that his call for the production of the paper came too late.

CONTRACT for compensation for having procured the making of a certain agreement between certain persons and the defendant, the first and fourth counts of the declaration, which alone are material, being described in the opinion. Writ dated January 17, 1911.

In the Superior Court the case was tried before *Chase, J.* The material facts which could have been found upon the evidence are stated in the opinion. At the close of the evidence the defendant asked the judge to rule that the plaintiff could not recover on the first, on the fourth or on any count of the declaration, and also asked for the following rulings:

"9. In determining whether Evans, Wallace and Plant came to an agreement at their joint conference, the conference should be treated as a whole.

"10. The evidence does not warrant a finding that Wallace and Plant ever came to an agreement for a loan.

"11. If Evans and Wallace would not invest the money until they satisfied themselves that the proposition was a safe one, then they were not men able, ready and willing to furnish the money before they had so satisfied themselves, and if they did not so satisfy themselves, the plaintiff cannot recover on the first, second, third or fourth count of the declaration.

"12. If the proposition, if any, of Evans and Wallace was dependent on an investigation, then they were not men ready, able and willing to furnish money before such investigation was made, and if so, the plaintiff cannot recover on the first . . . or fourth count of the declaration."

"14. The evidence does not warrant a finding that Wallace and Evans themselves were financially able and ready to furnish about $1,500,000 before October 1, 1910, and sufficient money thereafter for working capital estimated at about $1,000,000 for this shoe machinery business.

"15. The evidence does not warrant a finding that Wallace and Evans were ready, able and willing to agree themselves to furnish about $1,500,000 before October 1, 1910, and sufficient money thereafter for working capital estimated at about $1,000,-000 for this shoe machinery business.

"16. If Wallace and Evans did not agree to furnish the entire money themselves, but were merely to agree on the terms

on which they intended to form a syndicate, to be made up of themselves and such others as could be found to agree to furnish the money, and this syndicate was ever formed, then this did not constitute finding men ready, able and willing to furnish the money, in such a sense as would of itself entitle the plaintiff to compensation."

"20. The evidence does not warrant the conclusion that Plant did not intend in good faith to avail himself of such loan as might be obtained through Hutchinson."

"22. The evidence does not warrant the conclusion that Wallace or Evans ever actually formed the syndicate.

"23. If Plant and Hutchinson made a definite agreement that Plant would pay Hutchinson $50,000 in cash if the trade went through and double that amount if the business was sold before January 1, 1911, and no other agreement as to compensation was made either expressly or by implication, then the plaintiff cannot recover on the first . . . or fourth counts of the declaration."

The judge refused to make these rulings except so far as some of them were covered by his charge, and submitted the case to the jury upon the first and fourth counts of the declaration with other instructions, which in part are described in the opinion.

The jury returned a verdict for the plaintiff in the sum of $109,168; and the defendant alleged exceptions to the refusal of the rulings requested and to certain rulings as to the admission and exclusion of evidence which are referred to in the opinion.

*E. F. McClennen,* (*W. H. Niles* with him,) for the defendant.

*H. F. Hurlburt,* (*G. Calkins* & *C. A. Wilson* with him,) for the plaintiff.

SHELDON, J. The plaintiff seeks to recover a commission for having procured for the defendant from certain persons an agreement to pay to the defendant the sum of $1,500,000 for a half interest in his shoe machinery business and to provide him with additional working capital, estimated at $1,000,000 at least, for carrying on that business. The verdict for the plaintiff was rendered upon the first and fourth counts of his declaration, which were respectively upon a *quantum meruit* for the value of his services and an account annexed, in which he claimed to be entitled to $150,000 for the same services. There was evidence which warranted a finding that the plaintiff had been employed

by the defendant to render these services, and that the plaintiff thereupon brought the defendant into communication with two men in New York, Wallace and Evans, with whom there was considerable negotiation by both the plaintiff and the defendant. Finally, on September 8, 1910, the defendant and Wallace and Evans had a meeting at the rooms of the Central Trust Company in New York, to discuss the matter. The plaintiff contends that in this interview a definite agreement was made between them, that the defendant stated the terms upon which he would take the money from Wallace and Evans and their associates (called the Central Trust Company Associates) and that Wallace and Evans agreed to furnish the money on those terms. The defendant however contends that there took place at this interview nothing more than merely tentative negotiations, conducted with a view to ascertain whether there was any basis upon which an agreement afterwards could be reached. The plaintiff testified that two days before this interview the outlines of the proposed plan had been approved by the defendant, and that he, the plaintiff, had prepared a memorandum which read as follows: "Wonder Worker Shoe Machinery Company, formed with four million dollars preferred and six million dollars common, Mr. Plant owning all the stock. Mr. Plant sells $2,000,000 Preferred and $3,000,000 Common to Central Trust Company Associates for $1,600,000. This being one half, more or less, of Mr. Plant's investment in the shoe machinery business. The Central Trust Company Associates make this purchase only after being satisfied with investigation. The Wonder Worker Company to own everything Mr. Plant owns or controls in the shoe machinery business including all patent rights. Common stock only to have voting power; no dividends to be paid on preferred stock the first year. Mr. Plant to be president of the company, and of the six directors to have three selected by and including himself." The plaintiff testified that this memorandum was approved by the defendant. There was much contradictory evidence, but the jury could find that at the meeting of September 8 a definite agreement was made between the defendant and Wallace and Evans, upon the basis of this memorandum and the additional stipulation that they, Wallace and Evans, should supply also working capital to the amount of $1,000,000. There was evidence also that after

the conclusion of this agreement the defendant made additional demands upon Wallace and Evans, and that for this reason the matter fell through.

Upon these findings the verdict for the plaintiff was justified, and these exceptions must be overruled, unless some of the specific contentions now made by the defendant shall be sustained.

1. It is true, as the defendant contends, that at the end of the interview of September 8 there was no binding agreement between the defendant and Wallace and Evans. But this is not decisive; for as we have seen it could be found that a final and definite agreement had been made in the course of that interview, by the defendant's statement of his terms and the acceptance of those terms by Wallace and Evans to the defendant's satisfaction. If then, after the conclusion of that agreement, the defendant made new requirements to which Wallace and Evans would not accede, and thereupon the agreement which had been reached was abandoned and the whole matter dropped, this would not affect the right which already, upon the conclusion of the agreement, had accrued to the plaintiff. *Fitzpatrick* v. *Gilson,* 176 Mass. 477, 478, 479. *Roche* v. *Smith,* 176 Mass. 595. *Johnson* v. *Holland,* 211 Mass. 363. The defendant's tenth request rightly was refused, and the question fairly was left to the jury under full and accurate instructions.

2. The defendant's ninth request ought not to have been given in the form in which it was put, for the reason that has been stated. But the jury were told that everything that took place during the interview or conference, as well as what took place before and afterwards, bearing upon the issue, must be considered. That was correct, and it was enough.

3. The fifteenth request rightly was refused. If the defendant had given his terms to Wallace and Evans and they had accepted those terms and made a definite agreement with him to his satisfaction, as under the instructions given the jury must have found, that was enough. Having accepted the terms, as stated by the plaintiff in his behalf, adopted by himself, and acceded to by Wallace and Evans, it was no longer a question whether Wallace and Evans could themselves out of their merely individual resources furnish the necessary money, if in fact they could obtain it. If the defendant was satisfied with their responsibility

and was willing to accept and in fact did accept them as suffi-
ciently responsible for the purpose, — if in other words he chose to
accept Wallace and Evans and their assent to his proposition as
a performance by the plaintiff of what he had employed the plain-
tiff to perform, — the final agreement so made by him with Wal-
lace and Evans was enough. *Ward* v. *Cobb,* 148 Mass. 518.
*Monk* v. *Parker,* 180 Mass. 246. *Cohen* v. *Ames,* 205 Mass. 186.
*Johnson* v. *Holland,* 211 Mass. 363. *Rosenthal* v. *Schwartz,* 214
Mass. 371. Upon this point also the instructions given were
sufficiently favorable to the defendant.

4. The subject matter of the sixteenth and twenty-second
requests was dealt with correctly. And this matter now has be-
come immaterial; for we must take it as settled that the defend-
ant did on September 8 conclude a definite agreement with Wal-
lace and Evans. And under the instructions the jury must have
found also that Wallace and Evans were able, ready and willing
to furnish the necessary money, and that the defendant was
satisfied of this fact.

5. The eleventh and twelfth requests were mainly covered by
the charge. So far as not given, they were dealt with rightly.
The language of the memorandum that the associates "make this
purchase only after being satisfied with investigation" was am-
biguous, and the agreement was an oral one, though founded upon
this memorandum. The judge left it to the jury to say whether
the investigation was to be into the merits of the plaintiff's claims
and the safety of the proposed investment, in which case he ruled
that the plaintiff could not recover, or whether it was to be merely
an investigation into the truth of the defendant's representations
of existing facts. Summing this up, the judge said to the jury:
"If Wallace and Evans at that time had before them a definite
proposition made by the defendant, and they said, in effect, 'We
will accept your proposition subject to verification,' you might
find that that constituted such an agreement as is required in
this case, and that that was an acceptance of the defendant's
proposition. If, on the other hand, what they said was in effect,
'We are interested in your proposition. We will look into it and
investigate it in order to determine whether or not we think it
wise or safe, and will let you know later,' then there was no such
agreement as is necessary to be shown by the plaintiff in order

to entitle him to a commission. You see this all may be placed in another light. The plaintiff must show that these men were willing to consummate the transaction at that time upon the terms which they claim were advanced by the defendant or named by him. They would be so willing if they agreed to do it subject to verification of the facts as stated by Mr. Plant. They would not be willing, within the meaning of that word, to do it if they said, 'We want to investigate facts and decide afterwards.' The difference is between whether they said, or whether you find that they said, 'We will decide now subject to verification of your statements,' or whether they said, and their position was in fact, 'We will investigate first and decide later.'"

This was full and correct; and the jury had a right to find that the stipulation for investigation did not constitute a condition precedent to the existence of an agreement, but a reservation to be complied with before the agreement should be carried out, which easily could be complied with before the time when the money was to be furnished. Of course, if representations of fact made by the defendant were false and were found so to be, and for that reason Wallace and Evans had been relieved of their obligations, this failure of the agreement, arising from the defendant's own fault, would not have released him from liability to the plaintiff. *Wright* v. *Young*, 176 Mass. 100. *Dotson* v. *Milliken*, 209 U. S. 237. *Little* v. *Liggett*, 86 Kans. 747.

6. The fourteenth request rightly was refused. The very fact that the defendant, without any evidence of fraud or mistake, had, as must have been found, accepted the responsibility of Wallace and Evans, was some evidence of their ability to furnish the money. And there was further evidence of their ability. Wallace testified to it, not perhaps with absolute certainty; but the testimony was received without objection, and we have found no evidence to the contrary. The defendant's own testimony, when called as a witness by the plaintiff, indicated that he was satisfied with their ability. The question was plainly for the jury. The testimony as to their reputation for financial ability was competent for the purpose for which it was admitted. *Coleman* v. *Lewis*, 183 Mass. 485. *Commonwealth* v. *Loewe*, 162 Mass. 518. The testimony as to the character and magnitude of the financial institutions with which they respectively were connected

was competent for the same purpose. The plaintiff is correct in his contention that the jury had a right to know what kind of men it was with whom the defendant thought that he was dealing.

7. The twenty-third request rightly was refused. If there was an agreement between the plaintiff and the defendant for the payment of a fixed sum of money, and the right to require that payment had accrued, it could be recovered in a count upon an account annexed. *Lovell* v. *Earle,* 127 Mass. 546.

8. The testimony as to the defendant's offer of a commission to Endicott if the latter would bring about a sale of the defendant's property to the United Shoe Machinery Company was not incompetent. It tended, or in connection with other evidence might have tended, to show a motive for the defendant's desire to secure an agreement for the supply of money from New York parties and for his then abjuring and causing the abandonment of that agreement. It showed or might show his desire to induce the Shoe Machinery Company to make the purchase from him by leading it to suppose that he was about to carry on an active competition with it. It tended to show the existence of a motive in his mind to do what the plaintiff asserted and the defendant denied that he had done. It comes under the rule of *Bock* v. *Wall,* 207 Mass. 506. Testimony of the amount afterwards obtained by the defendant from that company cannot be said to have been incompetent. It could be admitted in the discretion of the judge. It showed or tended to show that the defendant had succeeded in what the plaintiff contended was his object, the obtaining of better terms from the Shoe Machinery Company. *Wheeler* v. *Bornstein,* 214 Mass. 595, 597.

9. The defendant has no right of exception to the exclusion of the evidence offered by him that on the evening of September 22 he made a proposition to some Western shoe manufacturers which was less favorable to him than the one which it was contended that he had declined to make, or had avoided when made, with the Central Trust Company Associates. Upon the defendant's testimony as to his negotiations with Endicott and Winslow for a sale to the United Shoe Machinery Company, and his further testimony that on the night of September 19 or 20 he had agreed with Winslow upon the terms of such sale, it is hard to

see how the excluded testimony could have helped him. At any rate, it was not competent against the plaintiff.

10. Nor has the defendant any right of exception to the exclusion of his testimony as to his reason on September 14 for not having an examination of his machinery made. Both the plaintiff and the defendant had testified as to the reason which he assigned for his action. His undisclosed reason of course was not competent. *Emery Manuf. Co.* v. *Rood,* 182 Mass. 166, 168, 169.

11. The defendant was not entitled as of right to contradict the statement made by the plaintiff's counsel in opening the case that the defendant had made an admission to Boynton. The judge told the jury that this statement was not evidence. There was nothing here for the defendant to deny, and he cannot complain that he was not allowed to make a denial.

12. The plaintiff's counsel in examining the defendant as a witness asked him if he had dictated to any one what took place at the interview of September 8; and the defendant answered that he had, to his attorney. The counsel then asked him, reading from a paper: "Did you tell him that 'In my last interview I had no intention of trading with the New York people, particularly in view of their determination that they would dictate the terms on which the sale to the U. S. M. Company should be made. I did n't however, want them to know this, and particularly told them about a new indebtedness of $200,000 not previously mentioned, and said that I could finance this in Boston, although I knew I could n't, and it was arranged that they would send over their experts as soon as I notified them that I had arranged for this loan.' Did you give that statement?" The witness answered: "Something on that order. I will not say you have not quoted it accurately. I will not say that I did not make that statement in exactly the words that you have read." This was competent and material testimony, and was not objected to. Neither the defendant nor his counsel asked then to see the paper. Afterwards, while the defendant was putting in his case, and before calling him as a witness, the defendant's counsel asked for this paper, and the plaintiff's counsel, admitting that he had it, refused to produce it. The plaintiff's junior counsel was then put upon the stand, and was asked by the defendant's counsel

whether this paper was one written or dictated by the defendant, whether it was a fact that the paper did not contain the language recited in the question above stated, whether the plaintiff's counsel in putting the question had in his possession a paper that had been dictated by the defendant to one of his counsel, and whether he declined to produce this paper. He was asked also whether at the time of making the answer the plaintiff's counsel had a paper in his hand, whether he appeared to read from it, whether the defendant had in fact dictated a paper containing some of the words appearing in the question, and whether a paper shown to the witness was the one that he had in mind. Each one of these questions was excluded on the objection of the plaintiff, and the defendant excepted. The defendant was called, and testified that he had seen the typewritten report of the testimony containing the above question and answer, and that he did not dictate to any one any paper containing those words, that the words which he understood to be in the question were not there. The defendant offered to show by him that at the time of putting the question the plaintiff's counsel had a paper in his hand and appeared to read from it. He was asked also by his own counsel if he had, at the time of answering that question, dictated a paper containing some of those words and some different words. He was shown a paper, and asked whether that was the paper which he had in mind, and that paper was offered in evidence. All this was excluded upon the plaintiff's objection; and the defendant excepted.

We need not consider whether the defendant, if he or his counsel had requested it, would not have had a right to see the paper from which counsel was reading, before he could be required to answer questions which, really or apparently, asked about its contents. *Smith* v. *Plant,* 216 Mass. 91, 103. *Regina* v. *Ford,* 5 Cox C. C. 184. 1 Wigmore on Evidence, § 764. No such request was made, but the question was put and answered without objection.

The evidence was not put in by the plaintiff to show the contents of the statement dictated by the witness, but as proof of his declarations material to the issues on trial. The testimony was primary evidence of his oral admission rather than secondary evidence of the contents of the paper written from what he

said. *Smith* v. *Palmer*, 6 Cush. 513, 520. *Loomis* v. *Wadhams*, 8 Gray, 557, 562. *Commonwealth* v. *Wesley*, 166 Mass. 248, 252. *Clarke* v. *Warwick Cycle Manuf. Co.* 174 Mass. 434. The distinction is clearly stated in *Purinton* v. *Purinton*, 101 Maine, 250. See also *Morey* v. *Hoyt*, 62 Conn. 542, 556; *Taylor* v. *Peck*, 21 Gratt. 11, 20. *Slatterie* v. *Pooley*, 6 M. & W. 664. The objection, as a matter of right, was taken too late. *Boyle* v. *Columbian Fire Proofing Co.* 182 Mass. 93, 99.

Some of the questions, to the exclusion of which exception was taken, were incompetent; others could be admitted only in the discretion of the judge. The paper which was offered by the defendant had not been in the possession of the plaintiff or used at the trial, and was incompetent. *Mair* v. *Bassett*, 117 Mass. 356. *Corcoran* v. *Batchelder*, 147 Mass. 541. *Fiske* v. *Cole*, 152 Mass. 335. See also *Flood* v. *Mitchell*, 68 N. Y. 507; *National Bank of Commerce* v. *Meader*, 40 Minn. 325, 329; *Sechrist* v. *Atkinson*, 31 App. Cas. (D. C.) 1. The questions relating to the way in which the first question was put were about matters which the jury had seen and to which the judge permitted the defendant's counsel to refer. No harm was done to the defendant by their exclusion. See upon the subject in general *State National Bank* v. *Weed*, 39 App. Div. (N. Y.) 602; *Duffey* v. *Consolidated Block Coal Co.* 147 Iowa, 225, 230; *McBride* v. *Sullivan*, 155 Ala. 166, 172. These exceptions also must be overruled.

We do not deem it necessary to discuss the other questions that are raised. We find no error in the proceedings.

*Exceptions overruled.*