### FRANZ WENZ *vs.* FERDINAND WENZ.

Suffolk.     November 8, 1915. — January 4, 1916.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, & CARROLL, JJ.

*Payment.   Limitations, Statute of.*

In an action of contract, a defence of payment cannot be supported by showing an unliquidated claim of the defendant against the plaintiff and others for a breach of contract.

A writing signed by a debtor, in which, after stating that he previously had said, "the time will come when I will pay you the money," he adds, "which it is my intention to do," is a sufficient acknowledgment or promise to take an action of contract for the debt out of the operation of the statute of limitations under R. L. c. 202, § 12.

*Whether* the words in a writing signed by a debtor, "as soon as I do not have to give all my money at home, I will save some for myself and send it to you," should be construed as a conditional promise and therefore not a sufficient

acknowledgment or promise to take an action of contract for the debt out of the operation of the statute of limitations, it here was not necessary to decide, because other words contained in the writing constituted an unequivocal promise to pay the debt.

The words in a writing signed by a debtor, after authorizing the creditor to apply to the payment of the debt certain money of the debtor in the hands of the creditor to whom the writing was addressed, "In case there is any think left it should be served to me or if any think is short by law I will make good," was held to be an absolute promise to pay the debt sufficient to take an action of contract for the debt out of the operation of the statute of limitations.

The same decision was made as to the words, "I acknowledge the complete correctness of this statement and debt," following a promise to "make settlement" of any "shortage" left after the application to the debt of a certain fund belonging to the debtor.

In the case in which these decisions were made, there also was evidence of a part payment on account of the debt within six years sufficient to take the recovery of the debt out of the statute of limitations.

CONTRACT for $2,247.26, consisting of sums of money alleged to have been lent by the plaintiff to the defendant in 1897 and 1898 and interest thereon. Writ dated February 10, 1912.

The defendant's answer contained a general denial and also alleged payment and set up the statute of limitations. The defendant also filed a declaration in set-off for $142.90 on an account annexed with items for board, heat, light and rent.

In the Superior Court the case was tried before *Lawton,* J. It appeared that the plaintiff and the defendant were brothers and were natives of Austria, that the plaintiff was the oldest and the defendant was the youngest of a family of six children, that the defendant came to this country when he was seventeen years of age at some time before February 1887, that in June, 1910, the plaintiff came to this country and four months after his arrival went to live with the defendant at the defendant's house, where he continued to live until January, 1912.

The plaintiff testified that on four occasions in the years 1897 and 1898 he had made certain loans to the defendant by directing a banking concern in Austria to forward to the defendant sums of money aggregating about $1,468, and that he had received from the defendant during the years 1900 and 1901 about $200 in five payments, the last of which was a payment of $25 made on June 25, 1901.

The plaintiff introduced in evidence a letter sent to him by the defendant, which was in part as follows:

"34 Holmes Ave., Allston. Jan. 14, 1907.

"Dear Franz:

" When I came to Boston last Oct., I received a letter informing me that father had died — I did not know it before — later I received a letter in which you inform me that I am to inherit 300 gulden. I answered this letter at once and wrote you that you should keep this money and that the time will come when I will pay you the money which it is my intention to do.

" A short time ago Henry sent my wife a paper, which we took for a (note or bond). We could not understand what it was and she did not wish to sign it. She took it to a friend of hers, an attorney, who told her not to sign it and to leave it with him. All I got out of it was trouble, however, it does not matter. As soon as I do not have to give all my money at home, I will save some for myself and send it to you, so be patient, you do not need it so badly, I can explain better to you in the English language I was sick a year, over three months in bed and that has put me back a great deal, but I have a position now, not much better than nothing.             Best regards from          Ferdinand."

The plaintiff further testified that on November 13, 1911, the defendant signed a paper setting forth that the plaintiff had authority to take from their father's and mother's estates the share which was due to the defendant and apply the same to the indebtedness, if any, existing between them, that this paper not proving satisfactory to the plaintiff was torn up by the defendant, but that the plaintiff retained possession of the pieces and put them together. The following alleged copy of this paper was introduced in evidence by the plaintiff:

"34 Holmes Ave. Boston, Nov. 13, 1911.

" I, Ferdinand Wenz do hereby declare that Franz Wenz has the right to take all moneys belonging to me from my father's and mother's estates until his just amount is payed which I owe him.

Ferdinand Wenz.

" The amount as claimed by Franz Wenz is 3600/46 gulden. In case there is any think left it should be served to me or if any think is short by law I will make good."

The following document drawn up by the plaintiff with a seal affixed and signed by the defendant was put in evidence:

"Boston, November 16, 1911.

"The writer Ferdinand Wenz of Boston confers upon his brother Franz Wenz power of attorney to take over and to receipt for, in his stead and in his name, as if the writer were personally present, an inheritance due the writer according to law in Brünn and from the sum of money received, to reserve for himself the amount still due him from me according to the statement which follows:

| | |
|---|---|
| Received as loan . . . . . Kronen | 7200.92 |
| Repaid . . . . . . . . . | 977.23 |
| Balance, Austrian Value . . . | 6223.69 Kr. |

" Franz Wenz shall submit an accounting to the writer and in event of a surplus shall pay over same and in event of a shortage the writer shall make settlement.

" Franz Wenz advanced his undersigned brother Ferdinand Wenz of Boston the following sums as loans:

| | |
|---|---|
| November  4, 1897 Austrian Value Kronen . | 3998.94 |
| February  10, 1898 . . . . . . . . . . . . | 1001.00 |
| May      14, 1898 . . . . . . . . . . . . | 1998.98 |
| December 31, 1898 . . . . . . . . . . . . | 200.00 |
| Bank fees . . . . . . . . . . . . . . . . | 2.00 |
| Total Kronen . . . . . . . . . . . . . . | 7200.92 |

Repaid on same

| | |
|---|---|
| February  23, 1900 Check . . . . . . . . . | 248.10 |
| June      11, . . . . . . . . . . . . . . | 245.40 |
| September 19, . . . . . . . . . . . . . . | 238.41 |
| March      1, 1901 . . . . . . . . . . . . | 122.83 |
| June       25, 1901 . . . . . . . . . . . . | 122.69 |
| Total Kronen . . . . . . . . . . . . . . | 977.23 |

" I acknowledge the complete correctness of this statement and debt.

Ferdinand Wenz (Seal) "

There was evidence that the value in United States money of an Austrian krone at that time was twenty and four tenths cents and that a gulden and a florin each was equal to two kronen.

The defendant denied that he had received the total amount claimed by him, but admitted the receipt of $750. He further testified that on February 9, 1887, when he was living in Boston, he executed a certain document or order to the effect that in consideration of the payment of $500 the defendant released and assigned to his brothers and sisters and their issue all and whatever interest he might have as heir at law in his father's and mother's estates; that this was a subterfuge and was done for the purpose of saving his inheritance from confiscation by the Austrian Government because of his failure to render military service.

The plaintiff previously had testified that the drawing and execution of this paper was "a bluff."

Another statement was introduced and allowed in evidence, which was signed in Austria by the remaining children including the plaintiff, dated March 27, 1887, to the effect that notwithstanding the waiver of inheritance made by the defendant in the statement above described the brothers and sisters agreed that he still had equal inheritance rights with them in the mother's and father's estates.

A letter dated March 30, 1887, written by the plaintiff to the defendant was offered in evidence by the defendant in substance acknowledging the receipt of the assignment described above dated February 9, 1887, and enclosing the statement of the brothers and sisters dated March 27, 1887, which also is described above. This letter was excluded against the exception of the defendant.

In 1906 the father died leaving a will, dated March 12, 1897, in which the plaintiff was named a general heir so called and in which the plaintiff was left all the father's property with instructions to pay the children two thousand florins each, amounting in United States money to about $820, with the exception of a sister Anna Wenz, who was given four thousand florins (about $1,640) and the defendant who was given three hundred florins (about $123) with the explanation that he had received his in-

heritance share for which the father had received his acknowledgment which was among his papers.

The defendant offered evidence to show the value of the father's estate for the purpose of showing the defendant's proportionate share. The evidence was excluded against the defendant's exception. It appeared that the mother died in 1912, and that nothing further was done by either the plaintiff or the defendant in regard to the defendant's share in her estate and that no accounting or adjustment ever was had in regard to it.

At the close of the evidence the defendant asked the judge to make the following rulings:

"1. There is nothing in the letter of January 14, 1907, amounting to an acknowledgment of a prior indebtedness and a clear and definite promise to pay the same.

"2. There is nothing in the instrument dated November 13, 1911, amounting to an acknowledgment of a prior indebtedness and a clear and definite promise to pay the same."

"4. There is nothing in the instrument dated November 16, 1911, amounting to an acknowledgment of a prior indebtedness and a clear and definite promise to pay the same."

The judge refused to make any of these rulings.

In his charge to the jury the judge said:

"Counsel for the plaintiff has called my attention to one fact that I certainly had overlooked, that there is other evidence here tending to take the matter out of the statute of limitations, and that is that there was a payment made by the defendant to the suit, of $122.40, on November 16, 1911. Now that, if made with that amount of $122.40, is the share of the defendant in his father's estate, or rather, the bequest that came to him by his father's will, as I understand it; and the defendant says about that, that it ought not to be treated as a payment, because it didn't go through his hands at all. It isn't necessary that it should go through his hands. It is necessary, however, that it should have been taken from the estate by the plaintiff with the knowledge and consent and under the direction of the defendant. If, for instance, the defendant, knowing nothing about the money having become due him, the plaintiff simply took it and held it without the knowledge or consent of the defendant, and credited it as a payment, that would not be a payment. But if simply

the defendant at that time said to him, 'Take that money, keep it, and credit it to me, take it as so much payment on account,' then it is a payment just as much as though he had it in his own hands and handed it over to him or sent it to him by letter. If you say there was a payment at that time, that is sufficient to take it out of the statute of limitations, whether there is anything in the letters or instruments to take it out or not."

The jury returned a verdict for the plaintiff in the sum of $2,568.60, and by direction of the judge returned a verdict for the defendant on his claim in set-off in the sum of $163.19.

The defendant alleged exceptions to the refusal of the judge to allow the introduction of evidence to show the value of the father's estate for the purpose of showing the amount of the defendant's share in it, to that portion of the judge's charge referring to the payment of $122.40, to the exclusion of the letter dated March 30, 1887, and to the refusal to give the rulings requested.

*H. A. Wilson, F. Juggins & T. F. Murphy,* for the defendant, submitted a brief.

*J. G. Walsh,* for the plaintiff.

DE COURCY, J. The verdict in this case is for money lent by the plaintiff to his brother, the defendant, in 1897 and 1898. The exceptions relate to the issues raised by the answers of payment and the statute of limitations.

1. The offer of evidence to show the value of the estate of their father properly was excluded. Even if we disregard the purpose and legal effect of the agreement by which the defendant waived his claim of inheritance, and of the declaration signed by his brothers and sisters acknowledging his equal inheritance rights notwithstanding the waiver, the offer did not purport to show that the plaintiff ever received from the estate any money to which the defendant was entitled except the legacy of three hundred gulden; and this he directed the plaintiff to keep on account of the loan. If the defendant had a further and unliquidated claim against the plaintiff, growing out of the joint executory contract, it could not be litigated in this action, under a plea of payment. See *Borden* v. *Sackett,* 113 Mass. 214.

The letter of the plaintiff dated March 30 was rightly excluded for the same reason, and for the further reason that it added nothing to the declaration already in evidence.

2. It is a settled principle that in order to avoid the statute of limitations there must be either a new express promise to pay, or one which the law implies from an acknowledgment of the debt as a present indebtedness; and the promise, whether express or implied, must be unconditional, or there must be evidence that the condition has been performed. *Custy* v. *Donlan,* 159 Mass. 245. *Gillingham* v. *Brown,* 178 Mass. 417. The requests for rulings call for the application of this principle to three documents signed by the defendant. R. L. c. 202, § 12. The first, which was the letter dated January 14, 1907, after reciting that the defendant earlier had written "that you should keep this money and that the time will come when I will pay you the money," added "which it is my intention to do." This was an unqualified acknowledgment of present indebtedness, sufficient to avoid the statute, even assuming that the sentence "As soon as I do not have to give all my money at home, I will save some for myself and send it to you," should be construed as a conditional promise. The second paper, dated November 13, 1911, after authorizing the plaintiff to apply upon the debt certain moneys of the defendant, added: "The amount as claimed by Franz Wenz is 3600/46 gulden. In case there is any think [*sic*] left it should be served [*sic*] to me or if any think [*sic*] is short by law I will make good." This was an absolute promise to pay the debt. *Nathan* v. *Leland,* 193 Mass. 576. The third document, dated November 16, 1911, after setting out the account in detail, expressly declared, "I acknowledge the complete correctness of this statement and debt," and unconditionally promised to "make settlement" of any "shortage" left after the plaintiff should apply on account a certain inheritance then due to the defendant. We find no error in the judge's refusal to give the three rulings requested.

3. The plaintiff testified that on November 16, 1911, the year after he had come to Boston, he received from the defendant a payment on account of the debt amounting to $122.40. From the testimony, and the statement of November 16, 1911, signed by the defendant, it appears to have been an unconditional payment on account of this debt. As such it was sufficient to take the debt out of the statute of limitations, irrespective of the acknowledgments in writing already referred to. *Gillingham* v. *Brown, ubi supra.* If the letter of January 14, 1907, referred to the same

money, that letter was an earlier authorization to apply it on account of the defendant's debt when the plaintiff later should receive the inheritance money. The portion of the judge's charge which dealt with the application of this money by direction of the defendant was correct.

It follows that all the exceptions taken by the defendant must be overruled.

*So ordered.*