WESTMINSTER NATIONAL BANK & another *vs.* IDA S. GRAUSTEIN & others.

Worcester. September 23, 1929. — March 13, 1930.

Present: CROSBY, PIERCE, SANDERSON, & FIELD, JJ.

*Equity Jurisdiction*, To reach and apply equitable assets, Laches. *Bills and Notes*, Assignment, Consideration, Validity, Payment. *Assignment. Fraud. Res Judicata. National Bank. Corporation*, Ultra vires. *Evidence*, Competency, Relevancy and materiality, Presumptions and burden of proof. *Payment. Equity Pleading and Practice*, Master: findings, report; Commencement of suit; Decree; Election; Parties; Bill. *Limitations, Statute of. Agency*, Existence of relation, Scope of authority. *Bankruptcy. Negligence*, Of assignee of chose in action. *Contract*, What constitutes, Consideration, Validity. *Frauds, Statute of. Interest.*

A woman, after making application to a national bank for a loan of $10,000, in November, 1914, executed a negotiable promissory note for that sum secured by a mortgage and payable to a man in monthly instalments of $500. On the same day the man executed a note to the bank for the same sum and assigned the mortgage and mortgage note to it. He did not indorse the mortgage note. About two weeks later the bank credited the woman's account with $10,000. As a matter of record, the bank thereafter treated the man's note as the primary obligation and the mortgage note as security. It subsequently charged several monthly instalments to the woman's account with it and credited them on the man's note. In certain months it did not do so, although there was money in the woman's account available for that purpose. The woman knew that the bank was the real party in interest in making the loan, although she believed that the note had been indorsed to it. There was no fraud practised upon the woman by the bank with regard to the identity of the parties to the transaction, the assignment of the note and mortgage, the bank's bookkeeping methods or the deduction and application of payments. In September, 1915, when the woman had paid $5,000 upon the loan, she desired to borrow $3,000 of the amount paid; and made an agreement in writing with the bank that such $3,000 might be "applied to

other purposes" and not indorsed upon "the notes secured by said mortgage." She thereupon returned to the bank six of the debit slips showing six monthly payments of $500 each deducted from her account, and delivered to it a note of $3,000, whereupon the bank placed $3,000 to her credit. Thereafter one monthly payment was deducted from her account and credited to the man's note. In 1916 she stated that $7,500 remained unpaid on the mortgage note. In December, 1915, she gave a sum of money in excess of $7,500 to a man, who had no general authority to act for the bank and no authority to collect money for it from her. None of this money was received by the bank. In a suit in equity by the bank against the woman to recover the balance of $7,500 upon the mortgage note, it was found and ruled that there was consideration for that note; that the transaction relating to the $3,000 was not a new loan but a reborrowing to that extent of the instalments paid; that the defendant had waived her right to have that sum applied to the mortgage note; and that a balance of $7,500 was due the plaintiff. The plaintiff offered the $3,000 note in evidence, but stated that it was not presented for the purpose of recovery. *Held*, that

(1) Under G. L. c. 231, § 5; c. 107, § 72, the plaintiff had sufficient title to the mortgage note to maintain the suit in its own name;

(2) The man, the payee of the mortgage note, was not a necessary party to the suit, his assignment having been unconditional and he having no further rights which could be affected;

(3) Since the defendant executed her obligation in the form of a negotiable instrument, she could not object to the plaintiff's enforcing it, there having been no fraud practised upon her in this connection;

(4) The finding, that there was consideration for the mortgage note, was warranted: the circumstances leading up to the lending of the money by the plaintiff appeared to be all part of one transaction and the loan to be the result of the execution of the note;

(5) U. S. Rev. Sts. §§ 5136, 5137, prohibiting national banks from taking a mortgage of real estate to secure a new loan, did not render the note wholly void, but merely voidable in proceedings instituted by the United States: those sections did not afford the defendant a defence to the note;

(6) In the circumstances, there appeared to be nothing in the plaintiff's method of making the loan or in its bookkeeping methods relating thereto which would bar its right to recover; and there was no merit in a contention by the defendant that funds in her account with the plaintiff had been misappropriated by it;

(7) The transaction in connection with the reborrowing of $3,000 in September, 1915, revived to that extent the defendant's indebtedness which had been discharged by her payments against the mortgage note: the parties legally could vary the application of her payments by mutual agreement;

(8) There was no error in the findings and rulings as to such reborrowing;

(9) The parties' agreement with regard thereto and the note for $3,000 were competent in evidence;

(10) The finding as to the amount due on the note in suit was warranted;

(11) In the circumstances, the payment in December, 1915, was not a payment thereof to the plaintiff and was not a defence to the suit;

(12) The failure by the plaintiff in certain months to deduct the monthly payments due on the mortgage note from the defendant's account was not prejudicial to the defendant.

It appeared in the suit in equity above described that the defendant had a claim against a certain railroad corporation which she had assigned to the plaintiff as security for her note; and that the railroad corporation had deposited with a trust company a special fund under an agreement with her and the trust company reciting that the adjustment of her claim against it was subject to the assignment, that the deposit was made to protect it from liability to the plaintiff on account of the assignment, that, upon payment to the plaintiff of the indebtedness secured by such assignment and the delivery to the trust company of releases by the plaintiff discharging the railroad corporation of liability to the plaintiff, the trust company would pay the deposit to the defendant, and that the defendant should pay all the charges, compensation and expenses of that company. The plaintiff sought to reach and apply the deposit under G. L. c. 214, § 3 (7), in satisfaction of the defendant's obligation to it. The trust company still had the deposit at the commencement of the suit. The railroad corporation and the trust company were joined as parties. *Held,* that

(1) The deposit could not be attached in an action at law;

(2) The defendant had an interest in the deposit;

(3) All the parties being before the court, the plaintiff was entitled to reach and apply the deposit to satisfy the defendant's indebtedness to it;

(4) In the final disposition of the suit, the trust company was entitled to receive its charges, compensation and expenses.

It appeared in the suit in equity above described that the defendant had commenced and tried a suit in equity in another county against the plaintiff and the railroad corporation to set aside the assignment to the plaintiff of her claim against the railroad corporation. *Held,* that

(1) The issues determined in the previous suit were conclusive in the present suit so far as they were material;

(2) The extended record in the previous suit properly was admitted in evidence in the present suit.

The last payment was due on the mortgage note above described on July 3, 1916. The last payment of principal thereon was credited to the defendant on October 4, 1916. The note was not an attested instrument within the provisions of G. L. c. 260, § 1, Third. On December 21, 1916, the defendant, desiring to borrow a certain further sum from the plaintiff, executed an agreement reciting that the plaintiff was the holder of a mortgage dated in November, 1914, originally for $10,000, upon which $7,500 "remains unpaid," and providing that the mortgage should cover the new loan. The suit was commenced by a common law writ dated October 19, 1922, service of which was made upon the trust

company on October 21, 1922, upon the railroad corporation on December 18, 1922, and upon the defendant on January 27, 1923, by supplemental process for which application was made on January 9, 1923. It was found that service could have been made upon the defendant between the date of the writ and the return day; that the desire of the plaintiff to have service made on the trust company and the railroad corporation previous to service on the defendant was proper; and that the delay in serving upon the defendant was not such as to indicate an intention to postpone the commencement of the suit. The trial judge ruled that the agreement of December 21, 1916, was a sufficient acknowledgment in writing by the defendant to satisfy the statute of limitations, G. L. c. 260, § 13; and that the suit was commenced on October 21, 1922. *Held*, that

(1) The agreement of December 21, 1916, was an acknowledgment by the defendant to the plaintiff as her creditor within the provisions of said § 13;

(2) The recital as to the mortgage sufficiently identified the mortgage note, and the acknowledgment of the amount due on the mortgage necessarily referred to the amount due on the mortgage note;

(3) There was no merit in a contention by the defendant that the suit was not commenced until process was served upon her in January, 1923;

(4) The rulings were correct.

It appeared in the suit in equity above described that on October 28, 1914, the defendant's husband signed and sent to the plaintiff a letter stating that the defendant "makes the following proposition": the plaintiff to loan the defendant $10,000 on her note, she to pay $500 monthly on the note and $100 monthly on notes of a certain milk company held by the plaintiff, and the plaintiff to assign the milk company's notes to the defendant when they were paid in full either by her or by the "receivers" of the milk company, which then was in bankruptcy, it being understood that "she does not secure or become liable for the notes of . . . [the milk company] only the hundred dollars each month." This offer was not specifically accepted by the plaintiff, which made the loan to the defendant on the mortgage note a few days later. The milk company's notes were indorsed by the defendant's husband. The plaintiff proved a claim against it on the notes in the bankruptcy proceedings. From December, 1914, to October, 1916, the plaintiff made monthly deductions of $100 from the defendant's account and credited those sums upon notes of her husband held by it. It sent slips showing such deductions to the defendant at her business address with her cancelled checks. She trusted her employees to examine the monthly bank statements and had no personal knowledge of such deductions until 1920. Her husband in 1915 learned of them and protested to the plaintiff, which until that time believed that the defendant consented to them and to its application of the money. At no time did the defendant repudiate, as unauthorized, the transaction concerning the milk company's notes. By an amendment to the bill, the plaintiff alleged that the defendant "agreed" in the letter of October 28, 1914, to make the monthly payments on the milk company's notes as part of the

consideration for the loan made by it on the mortgage note, and sought to recover such of the monthly instalments as had not been paid by the defendant. It was found that the defendant's husband had authority to act for her in the transaction and that a binding contract was made by the defendant to make the $100 payments. The trial judge ruled that the plaintiff was entitled to recover, except for instalments which accrued previous to October, 1916, which the plaintiff conceded were barred by the statute of limitations. *Held,* that

(1) The reference by the plaintiff to the letter in the amended bill did not preclude the plaintiff from proving that a contract to make the monthly payments on the milk company's notes was made by acceptance of the offer contained in the letter; and the plaintiff's pleadings were sufficient to support a decree based on such a contract;

(2) The letter of October 28, 1914, properly was admitted in evidence;

(3) The loan to the defendant on the mortgage note was sufficient consideration for her promise to make the payments in question;

(4) In the circumstances, it properly could be said that the defendant's offer to make those payments was accepted by the plaintiff;

(5) The defendant's agreement to make those payments was not a contract to pay the debt of another; furthermore, if it were, the letter of October 28, 1914, was a sufficient memorandum to satisfy the statute of frauds, and the contract might have been fulfilled within one year by payment to the plaintiff of the milk company's notes by its "receivers" and by consequent assignment of the notes by the plaintiff to the defendant;

(6) The monthly payments to be made by the defendant were not upon the milk company's notes; and the fact that the plaintiff indorsed credits deducted from her account upon her husband's notes was immaterial;

(7) In the circumstances, the plaintiff was warranted in making those deductions;

(8) The agreement by the defendant to make the monthly payments was not invalid by reason of U. S. Rev. Sts. § 5197, permitting a national bank to receive no more than the rate of interest allowed by the laws of the State where the bank is located, or, if no rate is fixed by those laws, no more than seven per cent: the monthly payments were not to be made for the use of the money borrowed by the defendant under the mortgage note, even though the promise to make such payments was a part of the consideration for that loan;

(9) Furthermore, § 5197 permits a national bank to charge interest at the rate allowed by the laws of the State where it is located, and by the laws of this Commonwealth, so far as this transaction was concerned, the plaintiff's charge of interest was allowable;

(10) The bankruptcy of the milk company did not affect the defendant's agreement to make the monthly payments;

(11) The statute of limitations was not a defence to the plaintiff's right to recover monthly payments which accrued subsequent to October, 1916: the plaintiff had a cause of action for each payment as it accrued;

(12) The ruling by the judge was proper.

No error appeared in the suit in equity above described in a refusal by the trial judge to require the plaintiff to elect whether to go to trial on its claim upon the mortgage note or its claim upon the defendant's agreement to make the monthly payments upon the notes of the milk company.

There was no error in that suit in equity in a ruling by the trial judge that the plaintiff was not guilty of laches.

It appeared in the suit in equity above described that the interstate commerce commission made an award to the defendant under her claim against the railroad corporation. The assignment of that claim by the defendant to the plaintiff did not specify that the plaintiff should assume the responsibility of further litigation upon the award. There was no understanding to that effect between the plaintiff and the defendant, and the defendant did not offer to indemnify the plaintiff against costs and expenses of litigation. The defendant by a cross bill against the plaintiff sought to recover the amount of the award on the ground that the bank had neglected seasonably to bring an action to recover the award. It appeared that she, ignoring the bank's claim under the assignment, had brought an action against the railroad corporation upon the award and upon other claims; that the railroad corporation effected a settlement with her of all her claims in such a manner that it was impossible to determine what part thereof represented the claim on the award; and that, although the settlement value of the award was impaired somewhat by reason of the assignment to the bank, the extent of such impairment was entirely speculative and could not be measured with any certainty. The cross bill was dismissed. *Held*, that

(1) In the circumstances, it could not be said that the bank had violated any duty it owed the woman in failing to bring an action on the award;

(2) Furthermore, she had not sustained the burden resting upon her of proving that she had sustained damage by the bank's conduct;

(3) The cross bill properly was dismissed.

A trust company, which succeeded to all the rights of the national bank in liquidation, properly was admitted as a plaintiff in the suit in equity above described and as a defendant in the cross bill.

A final decree in the plaintiff's favor was entered in such suit in equity. Upon appeal by the defendant, this court ordered that the decree be modified by the allowance to the plaintiff of interest from its date to the date of decree after rescript and by allowing "costs and expenses of" the trust company; and that the decree, as so modified, be affirmed.

BILL IN EQUITY against Ida S. Graustein, Old Colony Trust Company, Boston and Maine Railroad, and Rutland Railroad Company, filed in the Superior Court on January 2, 1923, and afterwards amended, having been commenced by a common law writ dated October 19, 1922.

The bill as amended contained allegations that on No-

vember 3, 1914, the plaintiff lent the defendant Graustein $10,000, evidenced by certain promissory notes delivered by said defendant at that time; that, as part of the consideration of the loan, said defendant agreed to pay the plaintiff $100 per month until she had paid $10,000, on certain obligations of the Boston Condensed Milk Company, a bankrupt corporation which was indebted to the plaintiff in the sum of $10,000; that $9,500 remained due upon the $10,000 loan to said defendant, and $8,800 on the agreement to reduce the debt of the Boston Condensed Milk Company; that said defendant had assigned to the plaintiff certain claims against the defendant, the Boston and Maine Railroad and others as collateral security for the loan to her by the plaintiff; and that the defendants the Boston and Maine Railroad and the Rutland Railroad Company had deposited $12,000 with the defendant the Old Colony Trust Company for the benefit of the defendant Graustein under the agreement described in the opinion. The plaintiff sought to establish the indebtedness of the defendant Graustein to the plaintiff under her note and her agreement to pay $100 per month on the debt of the Boston Condensed Milk Company, and to reach and apply the $12,000 so deposited with the defendant the Old Colony Trust Company toward satisfaction of such indebtedness.

The defendant Graustein filed pleas and demurrers to the bill, and motions to dismiss, which were overruled. She also filed answers to the bill and the bill as amended. The defendants the Boston and Maine Railroad and the Old Colony Trust Company filed answers. The bill as amended was taken *pro confesso* as against the defendant the Rutland Railroad Company. Gardner Trust Company, as successor to and assignee of the Westminster National Bank, was admitted as a party plaintiff.

On April 7, 1924, the defendant Graustein filed a cross bill against the plaintiffs, in which she alleged that, in her claim against the defendant railroad companies, the interstate commerce commission had made an award in her favor; and that the plaintiffs, as assignees of her claim, had neglected seasonably to institute proceedings to enforce

said award, which therefore was lost to her damage. She sought judgment against the banks for the amount of the award.

Sundry interlocutory orders and decrees were made by *Lummus*, J. The suit and cross suit were referred to a master, material findings by whom are stated in the opinion. The suits thereafter were heard by *Weed*, J., who made the rulings described in the opinion, and by whose order there were entered an interlocutory decree denying a motion by the defendant Graustein to recommit the master's report, and confirming the report; and a final decree establishing the indebtedness of the defendant Graustein to the plaintiffs in the sums of $7,500 upon the note of November 3, 1914, and $7,100 under the agreement to pay $100 monthly, together with interest to the date of the decree upon both sums in the sum of $8,449.91, a total of $23,049.91, directing the payment of such sum within twenty days, and, if payment were not made, ordering the application of the deposit with the defendant the Old Colony Trust Company to the payment of said indebtedness; and dismissing the cross bill. The defendant Graustein appealed from the final decree and from the sundry interlocutory decrees and orders.

*W. A. Graustein*, attorney in fact, for the defendant Graustein.

*H. W. Blake*, for the plaintiff.

SANDERSON, J. This is a bill in equity brought under G. L. c. 214, § 3 (7), to reach the interest of the defendant Graustein, who will be referred to as the defendant, in a fund held by the Old Colony Trust Company and to apply the same to the payment of her note and of certain monthly instalments promised by her on account of two notes made by the Boston Condensed Milk Company and indorsed by her husband. Upon the findings these obligations were sold and transferred by the Westminster National Bank (hereinafter designated as the bank) to its successor and assignee, the Gardner Trust Company, which will be referred to as the plaintiff. The existence of the fund in question is admitted by the Old Colony Trust Company and found as a fact by the master to whom the case was referred.

1. The interests of the respective parties in the fund are set forth in a written instrument dated November 4, 1919, and executed by the defendant, the Old Colony Trust Company, the Boston and Maine Railroad and the Rutland Railroad Company. This agreement after reciting that certain disputed claims by the defendant against the two railroad corporations had been adjusted, that one of them had been assigned to the plaintiff to secure the defendant's indebtedness to it, that the adjustment was subject to any rights of the plaintiff as such assignee, and that there was a controversy about the amount of the indebtedness, provided for the deposit by the railroad corporations with the Old Colony Trust Company of a joint special fund of $12,000 to protect the railroad corporations from any liability to the plaintiff on account of the assignment, and it was agreed that upon delivery to the Old Colony Trust Company of proper releases from the plaintiff, approved by the railroad corporations, discharging them from any liability to the plaintiff, and upon being satisfied that the indebtedness secured by the assignment has been liquidated, the Old Colony Trust Company would pay the fund to the defendant. It is evident that this fund could not be attached in an action at law. The provision of the statute as to the property which may be reached by the equitable process is broad and inclusive. *Adamian* v. *Hassanoff*, 189 Mass. 194, 195. The property sought to be reached was in existence when this suit was instituted. The Old Colony Trust Company held the money, and the defendant had a distinct interest in it. It was hers when her indebtedness to the plaintiff was satisfied, certain releases were obtained and the charges incidental to the management of the fund paid. See *Lord* v. *Harte*, 118 Mass. 271; *Lewenstein* v. *Forman*, 223 Mass. 325; *Digney* v. *Blanchard*, 229 Mass. 235, 238, 239. In *Eastern Bridge & Structural Co.* v. *Worcester Auditorium Co.* 216 Mass. 426, the court held that the lessee's right or option to purchase demised property at a fixed price could be reached and applied to the lessee's indebtedness. In the case at bar all the parties are before the court, and the rights of all may be finally adjudicated. Both the plaintiff and the defendant

can be required to release the railroad corporations from all liability when the fund is ordered to be paid to the plaintiff· upon the establishment of the indebtedness alleged.

2. The plaintiff had sufficient title to the promissory note to enable it to maintain the suit. It was in the principal sum of $10,000 payable in monthly instalments, signed by the defendant and payable to Julius Meyer or order. Upon the day of its date, November 3, 1914, the mortgage securing it was assigned to the bank by Meyer, and this assignment included in terms an assignment of the note which was delivered to the bank, but not indorsed by the payee. At common law the assignee of a negotiable note was obliged to sue in the name of his assignor. *Jones* v. *Witter*, 13 Mass. 304. *Blunt* v. *Norris*, 123 Mass. 55, 56. *Troeder* v. *Hyams*, 153 Mass. 536, 540. G. L. c. 231, § 5, permits the assignee of a nonnegotiable legal chose in action, which has been assigned in writing, to maintain an action thereon in his own name. This statute was first enacted in 1897, and in the following year the negotiable instruments act was adopted. St. 1898, c. 533. Section 49 of that act, now appearing in G. L. c. 107, § 72, provides that where the holder of an instrument payable to his order transfers it for value without indorsing it the transfer vests in the transferee such title as the transferor had therein, and the transferee acquires in addition the right to have the indorsement of the transferor. See *Dean* v. *Vice*, 234 Mass. 13, 17. Furthermore, in a suit in equity if an assignment is absolute and unconditional and there is no remaining right or liability in the assignor which can be affected by the decree it is not necessary to make him a party to the suit. *Currier* v. *Howard*, 14 Gray, 511, 513. *Montague* v. *Lobdell*, 11 Cush. 111, 115. *Allyn* v. *Allyn*, 154 Mass. 570. *Jenkins* v. *Eliot*, 192 Mass. 474, 476. *Hunneman* v. *Lowell Institution for Savings*, 205 Mass. 441, 446. *Record* v. *Littlefield*, 218 Mass. 483, 484–485. *Cashman* v. *Bean,* 226 Mass. 198, 202. It does not appear that there is any liability of the payee named in the note which will be affected by the decree.

3. When the borrower puts his obligation in the form of a negotiable instrument, he consents to its transfer and cannot

object to the identity of an owner who seeks to enforce it. It appeared that the defendant's original application for a loan was made to the bank, and although the note and mortgage ran to Meyer, the defendant, before the loan was actually made, knew through her authorized agent that the bank and not Meyer was making the loan and was the real party in interest. The defendant's belief that her note had been indorsed to the bank rather than assigned is an immaterial consideration. *Kelly* v. *Commissioner of Banks*, 239 Mass. 298, 301. *Cosmopolitan Trust Co.* v. *Leonard Watch Co.* 249 Mass. 14, 19. There were no misrepresentations concerning the matter, and the defendant lost no rights by reason of her lack of knowledge. The master found, so far as it was a question of fact, that there was no deceit or fraud, and the facts found concerning the identity of the contracting parties, the assignment of the note, the bank's bookkeeping methods, the deduction and application of payments, and the failure of the bank to deduct payments in certain months to apply to the indebtedness do not constitute fraud as matter of law. The findings of fact are conclusive against the defendant's contention that the plaintiff cannot maintain this suit because of its fraud.

4. On January 29, 1920, the defendant filed a bill in equity in the Middlesex Superior Court against the present plaintiffs and the Boston and Maine Railroad to set aside the assignment to the bank of her claim for reparation against the Boston and Maine Railroad and the Rutland Railroad Company on the ground that the assignment was without consideration and was obtained by duress and fraud. The defendant in her answer in the present suit alleged that certain findings in the Middlesex suit adverse to the present plaintiff were *res judicata* in this suit, but at the hearing she objected to the introduction of the extended record in the Middlesex case on either of the plaintiff's claims, and later moved to strike out the evidence. The exceptions to the admission of this evidence and to the denial of the motion were rightly overruled. The master correctly ruled that the issues determined in the Middlesex equity suit were controlling and binding in the

present litigation so far as they were relevant and material, and correctly adopted the report of material facts filed in that case. A decision between the same parties upon matters well pleaded or litigated, including matters which might have been litigated, is conclusive in future suits between the same parties. *Eastman Marble Co.* v. *Vermont Marble Co.* 236 Mass. 138. *Cohen & Hammond, Inc.* v. *Arnold,* 250 Mass. 255. *Harrison* v. *Fall River,* 257 Mass. 545. *Olsen* v. *Fall River,* 257 Mass. 556. *Rappel* v. *Italian Catholic Cemetery Association,* 259 Mass. 550. Many of the issues involved in this proceeding were decided in the former suit.

5. The question whether there was consideration for this note was essentially one of fact, *Sullivan* v. *McEttrick,* 248 Mass. 496, 498, *Mercantile Guaranty Co.* v. *Hilton,* 191 Mass. 141, and the conclusion reached in the former suit and by the master in this, that the bank held the note for value, cannot be disturbed. The note and mortgage securing it were executed November 3, 1914, but the loan was not made until November 16, 1914, when additional security was given, and $10,000 was credited to the defendant's account with the bank. The evidence justified the conclusion that all of the occurrences leading up to the loaning of the money were a part of one transaction and that the money was loaned as the result of the execution and delivery of the note and of the other agreements made.

6. The defendant contends that the note on which the plaintiff seeks to recover was illegal because in violation of U. S. Rev. Sts. §§ 5136, 5137. The latter section by implication prohibits a national bank from taking a mortgage of real estate to secure a new loan, but this defence cannot prevail.

In *Kerfoot* v. *Farmers' & Merchants' Bank,* 218 U. S. 281, 286–287, the court said: "In the absence of a clear expression of legislative intention to the contrary, a conveyance of real estate to a corporation for a purpose not authorized by its charter, is not void, but voidable, and the sovereign alone can object. Neither the grantor nor his heirs nor third persons can impugn it upon the ground

that the grantee has exceeded its powers. . . . Thus, although the statute by clear implication forbids a national bank from making a loan upon real estate, the security is not void and it cannot be successfully assailed by the debtor or by subsequent mortgagees because the bank was without authority to take it; and the disregard of the provisions of the act of Congress upon that subject only lays the bank open to proceedings by the Government for exercising powers not conferred by law." See also *National Bank* v. *Whitney*, 103 U. S. 99. *National Pemberton Bank* v. *Porter*, 125 Mass. 333. *Corcoran* v. *Batchelder*, 147 Mass. 541, 542. *Prescott National Bank of Lowell* v. *Butler*, 157 Mass. 548, 549, 550.

Because of this Federal statute and the regulations of the Federal Reserve Bank, the plan for making this loan to the defendant through Julius Meyer as a nominal party was adopted. When he assigned to the bank the mortgage and note of the defendant he gave his own note to it for the same amount, and the bank credited the defendant's account with $10,000 but as matter of record treated the Meyer note as the primary obligation and the note of the defendant as security.. Monthly payments of $500 and interest were charged to the defendant's account by the bank and credited on the Meyer note. Having been given credit for all money taken from her account, she cannot successfully contend that the bank has misappropriated her funds. It has not been made to appear that the procedure was adopted to defraud the defendant or that she has been prejudiced by it. Her present indebtedness to the bank is the same as it would be if the credits had been indorsed upon her own note, and upon the findings her rights have been fully protected. The method adopted for making the loan did not deprive the bank of its right to recover in this suit.

7. In September, 1915, the defendant, who had then paid $5,000 upon the $10,000 loan, desired to borrow from the bank $3,000 of the amount which she had paid on the loan, and as an inducement that this sum be reloaned she, with her husband and two daughters, signed and delivered

to the bank an agreement which, after reciting in substance that the defendant in her own right with her husband executed to Julius Meyer a mortgage on November 3, 1914, that had been assigned to the bank, provided that for valuable consideration "the payments already made by us to said bank to the amount of three thousand dollars ($3000.00) may be applied to other purposes and not endorsed upon the notes secured by said mortgage." In connection with this agreement and at the time of its execution there was delivered to the bank a note for $3,000 payable to the order of the bank signed by the four parties to the agreement. When this note was delivered, the defendant returned to the bank six of the debit slips evidencing six monthly payments of $500 each, which had been deducted from her deposit, on account of the principal and interest on the original note. The bank on receipt of these documents credited the defendant's account with $3,000 as the proceeds of the new note. Thereafter only one monthly payment of $500 was deducted from the defendant's account and indorsed on the Meyer note to the bank. The master found that there remained due on the defendant's note for $10,000 as the result of these two transactions $7,500 with interest from October 3, 1916. This finding was in part the basis of the decree. When the note for $3,000 was offered in evidence, the plaintiff stated that it was not presented for the purpose of recovery.

There is no legal objection to parties by mutual agreement changing the application of money paid on account of a debt; in such case the part of the indebtedness which had been discharged is revived. *Rundlett* v. *Small*, 25 Maine, 29, 31. *Plummer* v. *Erskine*, 58 Maine, 59, 62.

We are not now concerned with the question whether the mortgage given to secure the loan could be held to cover the sum thus reborrowed, and for that reason cases like *Brooks* v. *Brooks*, 169 Mass. 38, 44, *Douglas* v. *Stetson*, 159 Mass. 428, 431, and *Merrill* v. *Chase*, 3 Allen, 339, are not controlling.

It also appeared that in an agreement connected with an application for a loan in December, 1916, the defendant

stated that $7,500 then remained unpaid on the mortgage. We find no error in the decision of the master as to the amount due, or in the ruling of the trial judge that the transaction was not a new loan but a reborrowing of $3,000 of the instalments of principal theretofore paid, and a waiver and release of her right to have that sum applied in payment of her $10,000 note. The agreement and notes connected with this transaction were properly admitted in evidence.

8. In support of the defendant's contention that her note for $10,000 had been paid in full, she introduced evidence that on or about December 27, 1915, she gave one Isador Meyer a sum of money in excess of the amount she then owed on the note. The findings of the master to the effect that Meyer had no general authority to act for the bank, and that on the occasion of the transaction now under consideration he was not acting as the representative of the bank and had no authority to collect for it the funds from the defendant are controlling on this issue. The master found that some of this money was never adequately accounted for by Meyer although a part of it was applied in payment of obligations of the Grausteins to him, but that none of the unexplained balance was received by the bank. No error of law appears in the statement of the master to the effect that he was unable to find any facts that would justify a conclusion either in fact or in law that the bank should be answerable for this money. No error appears in the exclusion of the evidence offered on this issue nor in the refusal of the master to report the evidence. *Martin* v. *Barnes*, 214 Mass. 29.

9. This bill in equity was inserted in a writ bearing date October 19, 1922. Service was made on the Old Colony Trust Company, the custodian of the fund, October 21, 1922, on the Boston and Maine Railroad December 18, 1922, on the Rutland Railroad Company by publication in January and February, 1923, and on the defendant Graustein January 27, 1923, by supplemental process for which application was made January 9, 1923. The last payment was due on the original note according to its terms on July 3,

1916. On October 4, 1916, the last payment on it of principal was made and credited to the defendant. The parties agreed before the master that the note, although purporting to bear the name of a witness, was not in fact an attested instrument within the meaning of G. L. c. 260, § 1, Third. It is not disputed that the statute of limitations would be a defence to an action on the note apart from the statements contained in an agreement with the plaintiff dated December 21, 1916, signed by the defendant, her husband and two daughters, concerning a loan of $500 to be made on a note of the defendant and her husband. This agreement in its preamble recited: "Whereas, the Gardner Trust Company is the assignee and holder of a mortgage given by us, the undersigned, to Julius Meyer, on or about November 1, 1914, originally in the sum of Ten Thousand Dollars ($10,000.) upon which Seventy-five hundred dollars ($7,500.00) remains unpaid"; and it provides that the mortgage should extend to and cover the new loan "so that the principal sum due under said mortgage is by us declared to be eight thousand dollars ($8,000) instead of seventy-five hundred dollars ($7500) as heretofore, and a default in payment of said note shall constitute a breach under the mortgage." The note for $500 was paid in part and the plaintiff has waived any right to recover the unpaid balance. The master found that in so far as it was a question of fact this agreement constituted an acknowledgment in writing by the defendant as of December 21, 1916, that there was due and owing and unpaid on the original $10,000 obligation the sum of $7,500. The trial judge ruled that the agreement of December 21, 1916, was a sufficient acknowledgment in writing by the defendant to satisfy the statute of limitations and that the amount then due was $7,500. In order to bring a case within the provisions of G. L. c. 260, § 13, "there must be either an express promise to pay, or an unqualified acknowledgment of present indebtedness, and this unaccompanied by any evidence showing a determination not to pay." *Barnard v. Bartholomew*, 22 Pick. 291, 293. *Krebs v. Olmstead*, 137 Mass. 504. "It is a settled principle that in order to avoid the statute of limitations there must be either a new express

promise to pay, or one which the law implies from an acknowledgment of the debt as a present indebtedness." *Wenz* v. *Wenz*, 222 Mass. 314, 321. If "a promise is to be raised in law from the acknowledgment of the debtor, such an acknowledgment ought to contain an unqualified admission of a previous subsisting debt for which the party is liable and which he is willing to pay." *Gillingham* v. *Brown;* 178 Mass. 417, 421. Upon the facts found the trial judge was right in his ruling on this issue. When the agreement was made the plaintiff owned the note and the acknowledgment was therefore made by the defendant to her creditor. The reference to the mortgage is sufficiently definite to identify the mortgage given to secure the $10,000 loaned by the bank to the defendant in November, 1914, and the acknowledgment of the amount due on the mortgage necessarily refers to the amount due on the obligation which was secured by it.

10. The defendant contends that, if the instrument of December 21, 1916, is an acknowledgment sufficient to revive the debt, the action was not begun as to her until she was served with process more than six years after December 21, 1916. The master found that service could have been made upon her during the time between the date of the writ and the return day if it had been attempted. He found that the desire to have service made on the trustee defendants prior to service on the real defendant was proper; that the delay in completing service on her was not such as to indicate an intention to postpone the starting of litigation; and that, so far as it was a question of fact, the bill in equity was in reality as well as in theory started on October 21, 1922. "An action is commenced when a writ issues out and is delivered to an officer with a *bona fide* intent to have it served upon the defendant. . . . The date of the writ is not conclusive evidence of the commencement of the action; it may be held to be commenced at any day after the issuance of the writ which may be most conducive to justice." *Rosenblatt* v. *Foley*, 252 Mass. 188, 190. *Estes* v. *Tower*, 102 Mass. 65. *Farrell* v. *German American Ins. Co.* 175 Mass. 340. *J. Cushing Co.* v. *Brooklyn Trust Co.* 235 Mass. 171. *Kras-*

*now* v. *Krasnow*, 253 Mass. 528.  It is evident that the intent to have the writ served existed when service was made on one of the defendants.  The case is distinguishable in its facts from *International Paper Co.* v. *Commonwealth*, 232 Mass. 7, and *Rosenblatt* v. *Foley, supra.*  No error of law appears in the facts found by the master upon this issue and the trial judge was justified in ruling upon those facts that this suit was begun on October 21, 1922.

11.  The plaintiff is seeking to recover not only upon the defendant's note but also upon her promise made as part of the consideration for the loan of $10,000 to pay $100 a month on certain notes of the Boston Condensed Milk Company, then in bankruptcy.  By an amendment to the bill the plaintiff alleged that as part of the consideration for the loan the defendant agreed to pay the plaintiff $100 on the obligations of the milk company to the plaintiff.  A later amendment adding an itemized statement referred to the amounts "agreed" in the letter of October 28, 1914, but the reference thus made to the letter did not preclude the plaintiff from proving that the contract was made by the acceptance in modified form of the offer or application for a loan contained in the letter.  See *Brackett* v. *Evans*, 1 Cush. 79; *Holbrook* v. *Dow*, 1 Allen, 397.  The pleadings will support a decree based upon the contract found by the master to have been made.  This letter signed by the defendant's husband stated: "Mrs. Graustein makes the following proposition: Your bank to loan her on her note $10,000. . . . She to pay $500 monthly on the loan and interest, and assume and pay $100.00 each month on the notes of the Boston Condensed Milk Co.  When the Boston Condensed Milk Co.'s note is paid in full either by her or the receivers — less interest and costs — the same to be assigned to Mrs. Graustein.  It is understood, however, that she does not secure or become liable for the notes of the Boston Condensed Milk Co. only the hundred dollars each month, until the new $10,000 to be loaned is paid in full."  The notes of the milk company referred to were held by the bank and dated respectively June 1, 1914, and July 30, 1914.  Each was for $5,000 payable in one month, and both were indorsed by the

defendant's husband.  These notes were duly protested for nonpayment and were proved in bankruptcy by the bank as claims against the milk company.  The master found that the proposition made in behalf of the defendant for the payment by her of $100 each month on these notes was a material consideration prompting the bank to make the loan of $10,000.  The ruling admitting the letter in evidence was right.  The defendant's agent, although an indorser on the notes of the milk company, could be found to be acting in good faith in the interest and for the benefit of the defendant in the negotiations for the loan and to be doing what he was expected and authorized to do.  The loan was a sufficient consideration for her promise.  The agreement with the bank did not purport to relieve the defendant's husband from his obligations as an indorser, but merely provided for an assignment of the notes to the defendant when paid in full either by herself or the receivers.  She has not at any time undertaken to repudiate the transaction as unauthorized, by repaying the loan which was made in reliance upon the promises made in her behalf by her agent.  *Nims* v. *Mount Hermon Boys' School,* 160 Mass. 177.  *North Anson Lumber Co.* v. *Smith,* 209 Mass. 333, 338.  *Six Little Tailors, Inc.* v. *Old South Trust Co.* 260 Mass. 41, 44.  *Calkins* v. *Wire Hardware Co.* 267 Mass. 52, 68.  No error appears in the finding of the master that the defendant's husband was acting for her "in the entire transaction," or in the adoption by him of the finding in the Middlesex suit that her husband had unlimited general authority to represent her in all business transactions, or in the conclusion that a binding contract to make the $100 payments was made at the time of the loan.  *Cottage Street Methodist Episcopal Church* v. *Kendall,* 121 Mass. 528.  *Robinson* v. *Nutt,* 185 Mass. 345, 348. *Des Rivieres* v. *Sullivan,* 247 Mass. 443, 446.

The bank thereafter deducted from the defendant's account $2,300 in monthly sums of $100 each beginning December, 1914, and ending October, 1916.  These payments were in part indorsed upon a note given the bank by the defendant's husband on November 3, 1914, and the rest upon a note given in renewal thereof.

The contentions relating to other notes given at the time and the renewals thereof, to the agreements concerning them, to the entries in the books of the bank as to their payment, and to indorsements and credits given when the deductions of $100 a month from the defendant's account were made, presented only questions of fact and in the conclusions reached by the master and the trial judge on these matters we find no reversible error. The bank sent debit slips to the defendant, with her cancelled checks, at her Boston business address, showing that the monthly deductions of $100 had been made and applied to the note of her husband. Credit has been given to her in this suit for these payments. She personally did not examine any of the correspondence or statements from the bank, but trusted her business employees to do that, and especially her husband and a person who was a clerk or secretary of the milk business. She did not visit the office, and took no part in the business, and had no personal knowledge of the debit slips until June, 1920. Her husband was engaged in other business and did not know of the debit slips, cancelled checks and accounts sent by the bank to the defendant until August, 1915, and did not know that the bank was applying $100 a month from the defendant's account to her husband's note. On August 7, 1915, he notified the bank of his bankruptcy and protested against further deductions of his wife's funds and their application to his note. Until the receipt of this letter from him the bank believed that the defendant was acquiescing in and consenting to the procedure of making the deductions from her account and applying the payments as it did.

The trial judge, who confirmed the master's report, stated that the master had not found specifically that so much of the offer contained in the letter of October 28, 1914, as related to the $100 monthly payments on the overdue notes of the Boston Condensed Milk Company held by the plaintiff was accepted by the plaintiff, and ruled upon the facts found by the master, and such inferences of fact as may reasonably be drawn therefrom, that the offer was accepted, and that it was within the scope of the

authority of the defendant's agent.   He further ruled that this was not a contract to pay the debt of another, and that, even if it were such a contract, the letter was a sufficient memorandum to satisfy the statute of frauds.   *Williams* v. *Bacon,* 2 Gray, 387, 393.   *White* v. *Dahlquist Manuf. Co.* 179 Mass. 427, 431.   *Jacobson* v. *Perman,* 238 Mass. 445, 448.   *Feinberg* v. *Poorvu,* 249 Mass. 88, 93. The defendant was to become the owner of the notes, *Nelson* v. *Boynton,* 3 Met. 396, 402, *Hill* v. *Grat,* 247 Mass. 25, 27, *P. Berry & Sons, Inc.* v. *Central Trust Co.* 247 Mass. 241, 245, *Washington & Devonshire Realty Co. Inc.* v. *Freedman,* 263 Mass. 554, 560, and if the receivers referred to in the letter should pay them, the obligation of the plaintiff to assign them might arise within one year from the date of the agreement.   *Flynn* v. *Caplan,* 234 Mass. 516, 520. *Bolton* v. *VanHeusen,* 249 Mass. 503, 506.   The trial judge ruled that the transactions relating to the milk company notes were not in fact payments of those notes, or either of them, and that it was immaterial that the bank indorsed the twenty-three $100 items upon the notes of the defendant's husband and not on the notes of the milk company; that when this suit was begun the $10,000 note of the defendant had not been paid in full nor had either of the $5,000 notes of the milk company been so paid; and that, in the circumstances under which the contract evidenced by the letter of October 28, 1914, was made, the bank was warranted in deducting $100 from the defendant's deposit in payment of the monthly instalments.   See G. L. c. 107, § 110; *National Mahaiwe Bank* v. *Peck,* 127 Mass. 298, 300; *Nineteenth Ward Bank* v. *First National Bank of South Weymouth,* 184 Mass. 49, 51; *Cosmopolitan Trust Co.* v. *Leonard Watch Co.* 249 Mass. 14, 24.

The plaintiff conceded and the trial judge ruled that the statute of limitations is a defence to all payments which had fallen due and remained unpaid on October 21, 1916. He found and ruled that on the date suit was begun the defendant owed the plaintiff on the obligation to pay $100 a month the sum of $7,100 with interest thereon from the date of the service of the writ, October 21, 1922, and

that the bank had a right to accept the offer as modified by making the loan which was requested in the letter. We find no error of law in these conclusions of the trial judge.

The master found that from November, 1915, through July, 1916, the defendant carried a sufficient balance to her credit in the bank to provide for the monthly payments of $500, but that the bank did not make deductions during those months. The defendant contends that the bank failed to make these deductions for the purpose of extending the time of payment so as to enable it after July, 1916, to apply $100 a month to the payment of the milk company's obligations. There is no finding that this was the purpose and no finding of any fraud in connection with the transaction. The fact that during this period there was money of the defendant in the bank which was not applied in payment of the note is not a defence to the note, *Doody* v. *Pierce*, 9 Allen, 141, nor to the right of recovery on the promise to make monthly payments. Upon the facts found these monthly payments were not in the nature of a penalty and no prejudice in the legal sense can have resulted to the defendant from the failure of the bank to collect each month the payments to which it was entitled.

U. S. Rev. Sts. § 5197, permits a national bank to receive interest allowed by the laws of the State where the bank is located and no more, and also provides that when no rate is fixed by the law of the State the bank may take a rate not exceeding seven per cent. The defendant contends that the plaintiff is barred from recovery on the part of the claim based on the promise concerning the milk company notes by reason of its violation of this section. But it has not been made to appear that this provision of law has been violated. The promise to make payments on the notes of the milk company was one of the considerations for making the loan, but the amounts to be paid on these notes were not to be paid for the use of the money borrowed. Other considerations were involved. The plaintiff bound itself to deliver these notes to the defendant when the conditions concerning their payment had been met. Furthermore, it has been decided that

"A national bank may charge interest at the rate *allowed* by the laws of the State or Territory where it is located." *Daggs* v. *Phoenix National Bank,* 177 U. S. 549, 555. In this Commonwealth any rate of interest may be charged with certain exceptions not material to this case. *Corcoran* v. *Batchelder,* 147 Mass. 541. *Irish* v. *Schooner,* 255 Mass. 359. G. L. c. 107, § 3; c. 140, § 90.

The bankruptcy of the milk company did not affect the agreement of the defendant to make monthly payments on the notes of that company. It was no part of the defendant's agreement that the milk company itself should remain liable. The debt was not extinguished by the bankruptcy proceedings. *Champion* v. *Buckingham,* 165 Mass. 76, 78. *Citizens Loan Association* v. *Boston & Maine Railroad,* 196 Mass. 528, 530.

The statute of limitations is not a bar to the recovery on the agreement made by the defendant to make monthly payments of $100 in so far as they had not matured before October 21, 1916. The amounts found to be due on this agreement were not based upon any monthly payments which should have been made prior to that date. The obligation was to make these payments "until the new $10,000 to be loaned is paid in full" and this loan has not been so paid. A right of action accrued as each monthly payment became due. *Heywood* v. *Perrin,* 10 Pick. 228, 231. *Electrelle Co.* v. *Maguire,* 215 Mass. 550. *Trahant* v. *Perry,* 253 Mass. 486, 489. The refusal of the judge to require the plaintiff to elect on which of its claims it would go to trial was right, and we find no reversible error in the ruling that the plaintiff has not been guilty of laches.

12. The plaintiff is seeking to reach and apply in payment of its debts money held by the Old Colony Trust Company under a contract in which the parties agreed that the defendant should pay all the charges, compensation and expenses of that company, and that it should have a lien therefor on the interest. As a part of the decree entered in the Superior Court the Old Colony Trust Company was properly awarded a sum in accordance with this agreement. The sum available for payment of the

defendant's indebtedness could be ascertained only by an inquiry as to the amount for which the Old Colony Trust Company was accountable under the agreement. See *Braman* v. *Foss*, 204 Mass. 404, 411. The decree after rescript should make provision for such charges, compensation and expenses to the date when entered.

13. On April 7, 1924, the defendant filed a cross bill in which she seeks to recover from the Westminster National Bank and Gardner Trust Company the amount of the awards of the interstate commerce commission to her against the Boston and Maine Railroad and the Rutland Railroad Company on the ground that the bank and trust company failed and neglected seasonably to bring actions within the time prescribed by statute for the recovery of the awards. See *Westminster National Bank* v. *Boston & Maine Railroad*, 244 Mass. 578. The master found that this assignment was given as further collateral security for the original indebtedness of $10,000 of the defendant to the bank and when it was executed the bank surrendered certain collateral security it was then holding; and that there was no understanding or agreement at the time of the assignment that the bank should assume the responsibility or burden of further litigation of this award except as stated in the assignment. The assignment did not by its terms place this obligation on the plaintiff, and it does not appear that the defendant offered to indemnify the bank against costs and expenses of litigation. Upon the facts in this case we cannot say that the plaintiff or the bank violated its duty to the defendant in failing to bring an action to recover the award. *City Savings Bank* v. *Hopson*, 53 Conn. 453, 457.

It appeared that the defendant, within the time limited by the statute of limitations, brought actions to collect the money awarded her, asserting her independence of any right of the plaintiff therein and ignoring any and all claims that it might have. These actions were defended by the railroad corporations, alleging among other grounds of defence that the defendant had assigned her claim to the bank or its successor, and that therefore she was not a proper party to recover the award. The master found as a fact that the

actions brought by the defendant reserved to her all her rights, if she retained any in view of the assignment. It does not appear that the plaintiff made any objection to the maintenance by the defendant of the actions to recover the award or that she had no beneficial interest therein after the assignment. See *Moore* v. *Spiegel,* 143 Mass. 413, 417; *Rogers* v. *Murch,* 253 Mass. 467, 471.

The defendant made a settlement with the Boston and Maine Railroad and the Rutland Railroad Company of several matters involved in litigation instituted by her including an adjustment of her claims for the awards by the interstate commerce commission, but no specific sum was agreed to be paid as consideration for the release of these awards. The amount received by her in this settlement was substantially more than the total of the sums awarded by the commission and interest, and mutual releases of all claims were given. The master found that each railroad corporation paid money for the settlement of the award. He also found that undoubtedly the settlement value of the award was somewhat affected and impaired by the fact of the assignment to the bank on which no action had been brought in its name, but that any attempt to measure the money value of such influence on the amount actually obtained in settlement would be futile; that the damages, if any, were of a highly speculative character and cannot be ascertained with any semblance of certainty; that they were vague and uncertain to such a degree that he was unable to determine them. He found that the defendant had not sustained the burden of proving as an essential part of her affirmative case in the cross bill any loss or damage resulting to her from the failure of the bank to institute proceedings to collect the award. The trial judge ruled that if negligence such as is alleged in the cross bill is in any circumstances actionable it is actionable only when resulting in damage to the assignor; that the assignee did the defendant no actionable wrong in failing and neglecting seasonably to bring suit to recover the award; and that she was not entitled to the relief sought in her cross bill. If it be assumed that the assignee had a duty to bring an action on the reparation claim within a year

from the date of the award and that in that action it would have recovered the full amount of the award and interest, still the finding that the defendant had not maintained the burden of proving damages is decisive against her rights to maintain the cross action.  She had the burden of proof on this issue in the cross bill notwithstanding the fact that in an action on the award the decision of the interstate commerce commission would be *prima facie* evidence of the facts found.  See 34 U. S. Sts. at Large, 584, 590, c. 3591, § 5, further amending § 16 of the interstate commerce act; *Interstate Commerce Commission* v. *Union Pacific Railroad*, 222 U. S. 541; *Meeker & Co.* v. *Lehigh Valley Railroad*, 236 U. S. 412, 430.  She had sought by legal proceedings to recover the award in her own behalf and made a settlement under such circumstances that it was impossible to determine what part of the payment represented a settlement for the award.  She is not entitled to be paid twice for the same thing and under the circumstances there was no error of law in the conclusion of the master that the defendant had not maintained the burden of proving damages in her cross action, and in the ruling of the judge that that action could not be maintained.  It is unnecessary to decide whether the assignment of the award included the claim against the Rutland Railroad Company.

14. Many of the defendant's objections to the master's report and her exceptions to the rulings on evidence and to other rulings have been covered by what has already been stated.  In so far as they have not been specifically mentioned we find no reversible error.

We have not deemed it necessary to treat in detail all grounds stated in the defendant's plea, her motion to dismiss, her demurrer, her exceptions relating to the pleadings, the questions raised by her appeals or the other questions argued in her behalf, but in the several rulings, orders and decrees concerning these matters, whether specifically mentioned or not, we find no error.  The Gardner Trust Company was made a party plaintiff on April 14, 1924, after the defendant filed her cross bill in which she sought relief against the bank and the trust company, and after a judge of the Superior

Court had decided that the litigation under the original bill and its exhibits sufficiently disclosed the relations of ownership of the bank and the trust company, and that the bill might properly be brought in the name of the bank. The trust company has succeeded to all the rights of the bank and the relief granted in the decree is in favor of the Gardner Trust Company only. Under these circumstances we find no error in the order permitting it to be joined as a party plaintiff. It could have maintained the bill in the name of the bank or in its own name.

The interlocutory decrees and orders from which appeals were taken are affirmed. The final decree is to be modified by adding to the indebtedness therein established interest on the principal sum of $14,600 from May 13, 1929, the date of such final decree, to the date of decree after rescript, and by allowing costs and expenses of the Old Colony Trust Company to the same date; as so modified it is affirmed with costs.

*Ordered accordingly.*